UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated, | : : : | Civil Action No. 1:07-cv-10329-RJS |
| | : | CLASS ACTION |
| Plaintiff, | : : | ECF CASE |
| vs. | : : | LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS |
| WYETH, et al., | : : | CERTIFICATION |
| Defendants. | : : : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................1

II.  STATEMENT OF FACTS COMMON TO THE CLASS ...................................3

    A.  Pristiq's Vital Importance to Wyeth's Financial Health....................3

    B.  Statistically Significant Evidence of Serious Adverse Effects Associated with Pristiq Were Known by Defendants by 2005 ................5

    C.  The Truth About the Serious Cardiovascular and Hepatic Effects Associated with Pristiq Is Uncovered ........................................6

III.  THE PROPOSED CLASS REPRESENTATIVE ...........................................7

IV.  ARGUMENT ............................................................................7

    A.  Securities Cases Are Particularly Suited for Class Action Treatment.....7

    B.  The Standards for Class Certification .......................................8

    C.  The Proposed Class Satisfies Rule 23(a) ..................................10

        1.  The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable ...............................................10

        2.  Questions of Law and Fact Common to the Members of the Class Exist ......................................................................12

        3.  The Claims of the Proposed Class Representative Are Typical of the Class ...................................................................14

        4.  Pipefitters Union Local 537 and Its Counsel Will Fairly and Adequately Protect the Interests of the Class ...........................15

    D.  The Proposed Class Satisfies Rule 23(b)(3) ...............................17

        1.  Common Questions of Law or Fact Predominate.....................18

        2.  A Class Action Is Superior to the Other Available Methods for the Efficient Adjudication of This Controversy ...........................22

V.  CONCLUSION..........................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................2, 18

*Baffa v. Donaldson*,
  222 F.3d 52 (2d Cir. 2000)...................................................................16

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................19, 20

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...............................................................18

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) .........................................................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund
  v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)..................................................................10

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)....................................................................11

*Darquea v. Jarden Corp.*,
  No. 06 Civ. 722 (CLB),
  2008 WL 622811 (S.D.N.Y. Mar. 6, 2008) .......................................13, 16, 18, 19

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ........................................................8, 12, 16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................9

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985)...................................................................9

*Ellenburg v. JA Solar Holdings Co.*,
  262 F.R.D. 262 (S.D.N.Y. 2009) .........................................................17

*Epstein v. Moore*,
  No. 87-2984 (AET),
  1988 WL 62213 (D.N.J. June 13, 1988) ..............................................14

**Page**

*Escott v. Barchris Constr. Corp.*,
    340 F.2d 731 (2d Cir. 1965)........................................................................8

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ............................................................12

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................14

*Gerber v. Computer Assocs. Int'l*,
    No. 91 CV 3610 (SJ),
    1995 WL 228388 (E.D.N.Y. Apr. 7, 1995) ............................................12

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)...............................................................2, 23

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)....................................................................................7

*In re Alstom S.A. Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ....................................................*passim*

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-CV-3431 (ARR),
    1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) ........................................2

*In re Baldwin-United Corp. Litig.*,
    122 F.R.D. 424 (S.D.N.Y. 1986) ......................................................14, 15

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) .................................................7, 18, 23

*In re Deutsche Telecom AG Sec. Litig.*,
    229 F. Supp. 2d 277 (S.D.N.Y. 2002).......................................................2

*In re Enron Corp. Sec.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................17

*In re Enron Corp. Sec. Litig.*,
    No. H-01-3624 (MH) (S.D. Tex.) ...........................................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)......................................................................9

659118_1

**Page**

*In re Frontier Ins. Group Sec. Litig.,*
172 F.R.D. 31 (E.D.N.Y. 1997) ............................................................................................12

*In re Initial Pub. Offering Sec. Litig.,*
260 F.R.D. 81 (S.D.N.Y. 2009) ............................................................................................21

*In re Initial Pub. Offering Sec. Litig.,*
471 F.3d 24 (2d Cir. 2006)...................................................................................................10

*In re Interpublic Sec. Litig.,*
No. 02 CIV. 6527 (DLC),
2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003) ......................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.,*
169 F.R.D. 493 (S.D.N.Y. 1996) .........................................................................................10

*In re NYSE Specialists Sec. Litig.,*
260 F.R.D. 55 (S.D.N.Y. 2009) .................................................................................... *passim*

*In re Oxford Health Plans, Inc. Sec. Litig.,*
182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................15, 16

*In re Salomon Analyst Metromedia Litig.,*
544 F.3d 474 (2d Cir. 2008)..............................................................................................8, 19

*In re Scor Holding (Switz.) AG Litig.,*
537 F. Supp. 2d 556 (S.D.N.Y. 2008)..................................................................................21

*In re Veeco Instruments, Inc., Sec. Litig.,*
235 F.R.D. 220 (S.D.N.Y. 2006) .........................................................................................22

*In re Vivendi Universal. S.A. Sec. Litig.,*
242 F.R.D. 76 (S.D.N.Y. 2007) ...........................................................................................11

*In re WorldCom, Inc. Sec. Litig.,*
219 F.R.D. 267 (S.D.N.Y 2003) ..........................................................................................19

*Kelleher v. ADVO, Inc.,*
No. 3:06CV01422(AVC),
2009 WL 2413362 (D. Conn. Mar. 30, 2009) ......................................................................17

*Kennedy v. Tallant,*
710 F.2d 711 (11th Cir. 1983) ...............................................................................................8

Page

*King v. Kansas City S. Indus., Inc.*,
   519 F.2d 20 (7th Cir. 1975) ................................................................................2

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972)..............................................................................9

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ...............................................................2, 3, 20

*Maywalt v. Partner & Parsley Petroleum Co.*,
   147 F.R.D. 51 (S.D.N.Y. 1993) ...........................................................................9

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002).............................................................................18

*Ohman v. Kahn*,
   No. 87 Civ. 7117 (JFK),
   1990 WL 97756 (S.D.N.Y. June 27, 1990) ........................................................14

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...........................................................................................23

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)...............................................................................12

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001)...............................................................................14

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ........................................................................18, 20

*Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*,
   552 U.S. 148 (2008)...........................................................................................19

*Teachers Ret. Sys. of La. v. ACLN Ltd.*,
   No. 1 Civ. 11814 (LAP),
   2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ....................................................11

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   No. 05 Civ. 1898 (SAS), 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006),
   *aff'd*, 546 F.3d 196 (2d Cir. 2008) ....................................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................7

- v -

Page

## STATUTES, RULES AND REGULATIONS

17 C.F.R.
　　§240.10b ..................................................................................................................19
　　§240.10b-5 .............................................................................................................19

Federal Rules of Civil Procedure
　　Rule 23 ............................................................................................... *passim*
　　Rule 23(a) ............................................................................................ *passim*
　　Rule 23(a)(1) .......................................................................................................10
　　Rule 23(a)(2) .......................................................................................................12
　　Rule 23(a)(3) .......................................................................................................14
　　Rule 23(a)(4) ................................................................................................15, 17
　　Rule 23(b) ........................................................................................................8, 17
　　Rule 23(b)(3) ....................................................................................... *passim*
　　Rule 23(g) ...............................................................................................3, 4, 5, 6

659118_1

Lead Plaintiff Pipefitters Union Local 537 Pension Fund ("Lead Plaintiff" or "Pipefitters Union Local 537") respectfully moves this Court for an order certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of a Class defined as:

> [All] purchasers and/or acquirers of Wyeth's publicly traded securities during the Class Period [June 26, 2006 through July 24, 2007, inclusive] who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

¶139.[1]  Lead Plaintiff also seeks an order appointing it as the Class Representative, as well as an order appointing the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.     PRELIMINARY STATEMENT

This is a securities class action against Wyeth and certain former officers and directors of the Company for violation of the federal securities laws.  The Complaint alleges that Wyeth investors were damaged when they purchased or acquired Wyeth securities during the Class Period at prices that were artificially inflated by Defendants' material misrepresentations and omissions concerning the Company's leading drug candidate, Pristiq, for the treatment of pre-menopausal vasomotor symptoms ("VMS").  The Complaint alleges that, during the Class Period, Defendants failed to disclose material adverse information about serious cardiovascular and hepatic adverse effects

---

[1]     Defendants are Wyeth, Robert Essner, Joseph Mahady, Kenneth Martin, Bernard Poussot, Robert Ruffolo, Jr. and Ginger Constantine (collectively, "Defendants").  All "¶___" references are to the Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint").  Dkt. No. 17.

associated with the use of Pristiq.  *See*, *e.g.*., ¶¶22-40, 62-106.  While these adverse effects were known to Defendants by no later than the start of the Class Period, it was not until July 24, 2007, after the FDA refused to approve Pristiq for VMS, that Defendants revealed "the potential for serious adverse cardiovascular and hepatic effects associated with the use of Pristiq [for VMS]." ¶107.  Upon the revelation of these facts, Wyeth's stock fell $5.70 per share on heavy volume and continued to drop sharply over the following trading days.  ¶¶47, 112, 133.  Lead Plaintiff now seeks to certify this case as a class action to redress, in the most efficient and effective manner possible, the losses caused by Defendants' misconduct.

Class certification in securities fraud class action cases, such as this one, is consistent with long-established Second Circuit and United States Supreme Court precedent.  *See*, *e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968); *see also King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975) (the "policy is to favor maintenance of class actions . . . surely in cases where securities fraud is charged").  Indeed, as this Court has stated, "'[c]lass certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market,'" as is the case here. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (Sullivan, J.) (citing *In re Deutsche Telecom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280-81 (S.D.N.Y. 2002)). [2]

---

[2]    *See also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) ("'[c]ourts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws'") (citation omitted); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *4 (E.D.N.Y. Apr. 27, 1999) (observing that

As demonstrated below, this action readily satisfies all of the prerequisites of Rules 23(a) and (b)(3) and is well suited for class treatment. First, the class members are so numerous and geographically dispersed across the country that joinder would be impracticable. Additionally, the proposed class representative's claims present common questions of law and fact, are typical of other class members' claims and Pipefitters Union Local 537 is more than adequate to serve as class representative. Common questions of law and fact also predominate over any individual questions and this requirement is applied "'permissively'" in securities fraud cases. *Lapin*, 254 F.R.D. at 175. Accordingly, this case should be certified as a class action and Pipefitters Union Local 537 should be appointed as Class Representative.

Further, Robbins Geller, the Court-appointed Lead Counsel, has and will continue to zealously represent the interest of the entire class and should be appointed Class Counsel pursuant to Fed. R. Civ. P. 23(g). Pipefitters Union Local 537 respectfully requests that the Court grant this motion in its entirety.

## II.  STATEMENT OF FACTS COMMON TO THE CLASS

### A.  Pristiq's Vital Importance to Wyeth's Financial Health

The Complaint asserts that Defendants violated federal securities laws by withholding material information from investors about the risk profile of Pristiq for the treatment of VMS. Wyeth's intent, by the beginning of the Class Period, was to market Pristiq for both the treatment of VMS and major depressive disorder ("MDD"). ¶16. However, it was Pristiq's use for the treatment of VMS that was necessary to make the drug a commercially viable, billion-dollar product. ¶¶13,

---

"the Second Circuit has expressed a strong preference for use of the class action device in resolving securities law claims").

15-19, 33-34.  Early Phase 3 studies showed that Pristiq for the treatment of MDD failed to differentiate in any way from Wyeth's best selling, but soon to be generic, anti-depressant drug Effexor.  ¶15.  While Wyeth still proceeded to obtain FDA approval for the MDD indication, it caused analysts and investors to question the commercial value of Pristiq as a "me-too" drug for MDD.  *Id.*  Wyeth needed to create a distinction between the two drugs and, thus, prior to the Class Period, Defendants began promoting the idea of using Pristiq for the treatment of VMS.  ¶¶15-19.

Indeed, Pristiq for VMS was important to Wyeth's long-term financial health.  ¶¶9-20, 34, 74-75, 114.  In the United States alone, nearly 23 million women suffer from VMS.  ¶7.  Prior to 2002, the first-line treatment for VMS was hormone therapy, such as Wyeth's Premarin and Prempro.  *Id.*  These drugs were struck a blow in July 2002 when the Women's Health Initiative Hormone Program ("WHI") published a 15-year study which concluded that Premarin increased the risks of stroke and blood clots and that Prempro caused an increased risk of breast cancer, heart disease, stroke, blood clots and urinary incontinence.  *Id.*  As a result, Wyeth's sales of Premarin and Prempro plummeted from $4.4 billion in 2001 to under $880 million in 2004 and the Company needed a way to tap into the lucrative women's health market.  *Id.*  Pristiq for VMS was their way and the drug was projected to generate more than $2 billion in annual sales for Wyeth.  ¶¶18, 34, 74-75, 114.

Pristiq was also important to Wyeth because its new drug "pipeline" was drying up and the Company faced the loss of significant income from drugs set to go off-patent.  ¶11.  The U.S. patent protection for Effexor expired in 2006 and generic versions were already "cannibalizing" Wyeth's revenue streams by August 2006.  *Id.*  Even more daunting for Wyeth, the patent protection for Effexor XR was set to expire in 2008 and generic versions of the drug were expected to launch in June 2010.  *Id.*  Pristiq was slated as the drug to replace the revenue streams from Effexor and

- 4 -

Effexor XR as their patents expired and went generic, and the ability to bring Pristiq for VMS to market was essential to the future growth of the Company.  ¶13.

### B.    Evidence of Serious Adverse Effects Associated with Pristiq Were Known by Defendants by 2005

Well before the beginning of the Class Period, Defendants conducted three Phase 3 trials of Pristiq's safety and efficacy in treating VMS.  ¶6.  By the time Wyeth completed the Phase 3 VMS clinical trials, the Company had invested several years and tens of millions of dollars to develop the drug and prepare it for marketing.  *Id.*

While Defendants were touting the benefits of Pristiq – both for women with VMS and for Wyeth's corporate coffers – and expressing their confidence in a timely launch of Pristiq in 2007, they knew that a significant number of women taking Pristiq had already suffered serious adverse events ("SAEs") during Phase 3 VMS clinical trials.  ¶¶22, 67, 78, 84, 90, 95, 105.  Specifically, Study 315, which commenced in December 2003 and was completed by May 2005 (¶23), revealed the use of Pristiq for the treatment of VMS was associated with serious hepatic (liver damage) and cardiovascular side effects such as heart attacks, coronary artery obstructions and hypertension. ¶¶25, 67, 78, 84, 90, 95, 105.

Incidents of hypertension in Study 315 were even worse.  Study 315 showed that women taking Pristiq for VMS were 353% to 508% more likely to suffer hypertension in comparison to women taking placebo.  ¶25.  Study 315 also showed that incidents of hypertension increased with dosage.  For instance, hypertension was reported in only 1.3% of the placebo-treated group, while an average of 5.9% of all women in the Pristiq-treated group reported hypertension and 7.9% of women receiving a 200-mg dose of Pristiq reported suffering from hypertension.  ¶¶67, 78, 84, 90, 95, 105. Study 315 results further showed that not a single woman being treated with placebo suffered an SAE during Study 315.  ¶¶26, 67, 78, 84, 90, 95, 105.  The relative significance of the SAEs, and all

- 5 -

other adverse effects, was only heightened as the study revealed that more women on a regimen of Pristiq who suffered from an adverse event discontinued treatment in comparison to the number of women taking placebo. *Id.* Given that the target market for Pristiq for VMS – postmenopausal women – would have heightened sensitivity to these effects, the Study 315 results were particularly material to any evaluation of Pristiq and a threat to Pristiq's commercial viability. *Id.*

Despite submitting the Study 315 data to the FDA, Defendants failed to disclose publicly the negative safety results of the study or reveal the existence or nature of the SAEs, which all indicated that Pristiq posed a real and serious risk to patients and threatened the commercial success of Pristiq. ¶¶31, 52-57, 67, 78, 84, 90, 95, 105. Throughout the Class Period, Defendants continued to discuss with analysts and investors the results of the Pristiq clinical studies, and the purported safety and benefits of Pristiq, but failed to disclose the known cardiovascular and hepatic side effects. ¶¶63-66, 69-77, 80, 82-83, 85-89, 92-94, 97-104.

### C. The Truth About the Cardiovascular and Hepatic Effects Associated with Pristiq Is Uncovered

On July 24, 2007, Defendants issued a press release stating the Company failed to gain FDA approval for Pristiq for the treatment of VMS as a result of concerns about hepatic and cardiovascular side effects associated with the use of the drug. ¶¶42, 107. The July 24, 2007 disclosures were essentially a rejection of Pristiq as a VMS treatment and posed a serious threat to the Company's drug pipeline and the viability of Pristiq. ¶¶43, 45-46, 107-111, 113, 116, 119-120.

As a result of Defendants' July 24, 2007 disclosure, Wyeth's stock price dropped from $56.00 on July 23, 2007 to $50.30 per share on July 24, 2007, on extremely heavy volume. ¶112. Within three trading days, Wyeth's stock was trading below $49.00 per share – near where it was at the start of the Class Period. ¶¶47, 115, 117, 133.

- 6 -

## III.    THE PROPOSED CLASS REPRESENTATIVE

As set forth in the Declaration of Charles T. Hannaford in Support of Lead Plaintiff's Motion for Class Certification ("Hannaford Decl."), filed herewith, Pipefitters Union Local 537, the Court-appointed Lead Plaintiff, is a joint employee-employer Taft-Hartley pension fund managed and administered in Alston, Massachusetts, with approximately 2,917 participants, and assets valued at approximately $375 million.  Hannaford Decl., ¶¶2, 5.  During the Class Period, Pipefitters Union Local 537 purchased 40,000 shares of Wyeth stock.  *Id*., ¶4.  As Lead Plaintiff, Pipefitters Union Local 537 has expended considerable time and effort in informing itself about the case and working with counsel to prosecute this action on behalf of the Class.  *Id*., ¶6.  Additionally, through its counsel, Lead Plaintiff conducted an extensive investigation into Defendants' fraudulent schemes, and continues to spearhead the prosecution of the case.  Lead Plaintiff is committed to actively directing this litigation and, through its counsel, has already embarked on an aggressive discovery plan and will continue to do so.  *Id*., ¶¶7-8.

## IV.    ARGUMENT

### A.    Securities Cases Are Particularly Suited for Class Action Treatment

"Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981), and have been recognized repeatedly as an important means of enforcing the federal securities laws.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 320 n.4 (2007); *see also In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("It is well recognized that private enforcement of [the securities] laws is a necessary supplement to government regulation.").

Rule 23 allows for the effective enforcement of the securities laws for large numbers of individual investors who have suffered injuries, but do not have sufficient economic resources or the

individual interest to incur the expense or inconvenience of an individual lawsuit. *See, e.g.*, *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). As a result, securities law claims are routinely found to be appropriate for class treatment. *See, e.g.*, *NYSE Specialists*, 260 F.R.D. at 80; *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000). By providing a single forum to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *See, e.g.*, *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

**B.      The Standards for Class Certification**

"Class certification is warranted under Rule 23 where the proposed class representative meets the standards of Rule 23(a) – numerosity, commonality, typicality and adequacy – and the proposed class action meets the requirements of one of the subsections of Rule 23(b)."[3] *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008); *see also* Fed. R. Civ. P. 23(a). "'[T]he

---

[3]      Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b). The four prerequisites of Fed. R. Civ. P. 23(a) are as follows:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

- 8 -

standard of proof applicable to evidence proffered to meet' the requirements of Rule 23 [is] a 'preponderance of the evidence.'" (Citation omitted.) *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).   In determining whether class certification is appropriate in a securities action, "the Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation." *Maywalt v. Partner & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993).[4]   Thus, "'[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.'"   *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (citation omitted); *see also Alstom*, 253 F.R.D. 266, 275 ("'"if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require"'") (citations omitted).

In considering a class certification motion, courts are to focus only on whether the prerequisites of Rule 23 are met.   *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).   In doing so, a court may resolve factual issues concerning the prerequisites of Rule 23 when those

---

[4]     *See Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (holding that in determining class certification, courts must be "mindful of the admonition of liberality toward demands for class suit status in securities litigation"); *In re Alstom S.A. Sec. Litig.*, 253 F.R.D. 266, 274-75 (S.D.N.Y. 2008) ("The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases such as this one involving alleged manipulation of public markets, to maximize the benefits to the public provided by class actions.").

issues overlap with issues relating to the merits.  As set forth by the Second Circuit in *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement" and "has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits." *Id.* at 41.  There are no merits-based issues that impact the Court's consideration of class certification here.

As demonstrated below, this action and Pipefitters Union Local 537, the proposed Class Representative, satisfy both the prerequisites of Rule 23(a) and the requirement of Rule 23(b)(3), in that common questions of law and fact predominate and a class action here is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the federal securities laws.  Accordingly, class certification is appropriate here and the Court should grant this motion.

### C.   The Proposed Class Satisfies Rule 23(a)

#### 1.   The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *NYSE Specialists*, 260 F.R.D. at 69-70.  "The numerosity requirement of Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508 (S.D.N.Y. 1996) ("Impracticability means difficulty or inconvenience of joinder; the rule does not require

- 10 -

impossibility of joinder.").   In securities class actions "'relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'"   *In re Vivendi Universal. S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (quoting *Teachers Ret. Sys. of La. v. ACLN Ltd.*, No. 1 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004)).   In fact, numerosity is presumed when a class consists of 40 members or more.   *NYSE Specialists*, 260 F.R.D. at 70 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Here, the proposed Class far exceeds 40 members.   Indeed, throughout the Class Period Wyeth reported having more than 1.3 billion shares of common stock outstanding and more than 1,000 institutional investors reported owning Wyeth stock during the Class Period.   Declaration of Trig R. Smith in Support of Lead Plaintiff's Motion for Class Certification ("Smith Decl."), ¶5.

The reported trading volume during the Class Period for Wyeth common stock was 1.7 billion shares, which is 120% of the 1.3 billion average shares outstanding.   *Id.*, ¶2.   During the Class Period, the average weekly trading volume was 29.5 million shares and the average weekly trading volume over the Class Period as a percentage of shares outstanding was 2.2%.   *Id.*   As such, Lead Plaintiff believes – and Defendants cannot seriously dispute – that there are thousands of members of the proposed Class, more than satisfying the numerosity requirement.[5]

---

[5]   Lead Plaintiff has requested from Defendants the transfer records of Wyeth securities transactions during the relevant period.   To date, those records have not been produced.

### 2.    Questions of Law and Fact Common to the Members of the Class Exist

To establish commonality, "which has been characterized as a 'low hurdle'" (*Alstom*, 253 F.R.D. at 275), a plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "'The commonality requirement is met if plaintiffs' grievances share a common question of law or fact. Even a single common legal or factual question will suffice.'" *NYSE Specialists*, 260 F.R.D. at 70 (quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)). "The commonality requirement has been applied permissively by courts in the context of securities fraud litigation, and minor variations in the class members' positions will not suffice to defeat certification." *Dietrich*, 192 F.R.D. at 124.

This Court has already sustained the Complaint's allegations regarding the Class Period for which Lead Plaintiff seeks certification and upheld the sufficiency of the alleged misstatements. *See generally City of Livonia Empls. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329 (RJS), 2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010). Evidentiary proof of the claims that have been sustained will necessarily be common to all members of the Class. Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts." *Gerber v. Computer Assocs. Int'l*, No. 91 CV 3610 (SJ), 1995 WL 228388 (E.D.N.Y. Apr. 7, 1995) (quoting *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983)).

Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public, press releases and statements provided to the investment community and the media and investor conference calls. *See, e.g.*, *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (disseminating statements that omitted or misrepresented material facts deemed common questions);

- 12 -

*see also Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *2 (S.D.N.Y. Mar. 6, 2008) ("The alleged misrepresentation leading to artificially inflated stock prices relate to all the investors and the existence and materiality of such misstatements or omissions present important common issues.").  Among the questions of fact or law common to members of the Class are:

> (a)     Whether the federal securities laws were violated by Defendants' acts and omissions as alleged [in the Complaint];

> (b)     Whether statements made by defendants to the investing public during the Class Period misrepresented and omitted material facts about the business, operations and financial results of Wyeth; and

> (c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

*See* ¶143.

The misrepresentations and omissions alleged in the Complaint are the same type that courts routinely hold to satisfy the "common question" requirement.  *See, e.g.*, *Alstom*, 253 F.R.D. at 276 ("Where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions, the Commonality Requirement is satisfied."); *In re Interpublic Sec. Litig.*, No. 02 CIV. 6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003) (common issues of law and fact raised, including whether defendants' "public filings and statements contained material misstatements, whether the defendants acted knowingly or with reckless disregard for the truth in misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements").

In denying Defendants' motion to dismiss, this Court held that the Complaint adequately alleged the existence of material misrepresentations, as well as Defendants' scienter.  *See, e.g.*, *Wyeth*, 2010 WL 3910265, at *4 (the Complaint adequately alleges "the existence of material misrepresentations or omissions, scienter, and loss causation"); *id.* at *5.  These misrepresentations

- 13 -

and Defendants' scienter form the basis of Lead Plaintiff's claims, and are necessarily common to all members of the proposed Class.  Thus, the commonality requirement is satisfied for the members of the Class.

### 3.    The Claims of the Proposed Class Representative Are Typical of the Class

"Rule 23(a)(3)'s typicality requirement is satisfied when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *NYSE Specialists*, 260 F.R.D. at 70 (quoting *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001))[6]; *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986) ("As a general rule, a plaintiff's claim meets the typicality requirement if it arises from the same events or course of conduct that gives rise to the claims of other class members and if it is based on evidence and legal theories consistent with the other members' claims.").  In order to meet the typicality requirement, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'"  *Gerber*, 1995 WL 228388, at *3 (quoting *Epstein v. Moore*, No. 87-2984 (AET), 1988 WL 62213, at *6 (D.N.J. June 13, 1988)).  As Judge Brieant observed:

---

[6]    The Supreme Court has observed that the "commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *accord Ohman v. Kahn*, No. 87 Civ. 7117 (JFK), 1990 WL 97756, at *4 (S.D.N.Y. June 27, 1990) ("The typicality requirement of Rule 23(a)(3) is a close cousin of the commonality requirement.").  Accordingly, inasmuch as commonality has been established, typicality has been established as well.

Because this [typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.

*Baldwin-United*, 122 F.R.D. at 428.  The claims here arise from Defendants' uniform course of conduct, and each class member makes similar legal arguments to prove each Defendant's liability.

Pipefitters Union Local 537 purchased 40,000 shares of Wyeth securities at artificially inflated prices during the Class Period.  Hannaford Decl., ¶4.  It then suffered a loss when the fraud was revealed and the price of Wyeth securities plummeted.  ¶131.  Thus, Lead Plaintiff's claims are not only similar to those of the other members of the Class, they are virtually identical.  All members of the Class seek to prove that Defendants made misleading statements during the Class Period and failed to timely disclose material adverse facts about Pristiq.  As such, Lead Plaintiff and the other members of the Class have all been injured by the same alleged course of conduct by Defendants.  Moreover, the damages that all members of the Class seek arise from the purchase of Wyeth securities at prices that were artificially inflated as a result of Defendants' alleged false and misleading statements and omissions, and the subsequent decline in the price of the Company's stock when the fraud was revealed.  Thus, Lead Plaintiff stands in precisely the same position as other purchasers of the Company's securities during the Class Period.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (finding typicality where the claims of the putative class representatives "arise from the same conduct from which the other class members' claims and injuries arise").  Accordingly, typicality is satisfied here.

### 4.    Pipefitters Union Local 537 and Its Counsel Will Fairly and Adequately Protect the Interests of the Class

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This requirement is met if a plaintiff does not have interests that

are antagonistic to those of the class, and its chosen counsel is qualified, experienced and generally able to conduct the litigation. *See NYSE Specialists*, 260 F.R.D. at 73 (citing *Baffa v. Donaldson*, 222 F.3d 52, 50 (2d Cir. 2000)); *Oxford*, 191 F.R.D. at 376; *Dietrich*, 192 F.R.D. at 126.

Pipefitters Union Local 537 satisfies both prongs of the adequacy test. As noted above, Pipefitters Union Local 537 has already successfully represented the interests of the proposed Class and demonstrated its adequacy to prosecute this action by, among other things, filing a comprehensive complaint and defeating Defendants' motion to dismiss. *See* Hannaford Decl., ¶6. In addition, none of its interests are antagonistic to those of the Class. All members of the Class allege claims arising from the same wrongful conduct that are based on the same legal theories as Pipefitters Union Local 537's claims. *See, e.g.*, *Darquea*, 2008 WL 622811, at *3 ("All claims alleged arise from the same wrongful conduct, and thus, Plaintiff's interests, recouping money invested, are similar to those of the proposed class. As such, named Plaintiffs will fairly and adequately protect the interests of the class."). Moreover, Pipefitters Union Local 537 is clearly committed to the vigorous prosecution of this action. *See* Hannaford Decl., ¶¶7-8. Therefore, the interests of the other members of the Class will be more than adequately protected by Pipefitters Union Local 537, as they have been since the inception of this action.

As to the second prong regarding adequacy of counsel, Pipefitters Union Local 537 has retained the law firm of Robbins Geller to represent it and the proposed Class in this matter. As courts in this District have previously found, "[g]iven [Robbins Geller's] substantial experience in securities class action litigation . . . [the] element of adequacy has also been satisfied." *NYSE Specialists*, 260 F.R.D. at 74. Among other noteworthy securities fraud cases, Robbins Geller (then known as Coughlin Stoia Geller Rudman & Robbins LLP) attorneys have served as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (MH) (S.D. Tex.), in which it secured the largest

- 16 -

recovery ever obtained in a shareholder class action.  Specifically, commenting on counsel's "clearly superlative litigating and negotiating skills" and the firm's "outstanding reputation, experience, and success in securities litigation nationwide," the court in *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008), stated "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country."  *Id.* at 789-90, 797.  Courts within this Circuit have repeatedly found Robbins Geller to be adequate and well qualified for the purposes of litigating class action lawsuits.[7]  Thus, Robbins Geller is qualified to represent the Class and, along with Lead Plaintiff, will vigorously protect the interests of those shareholders.  Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### D.    The Proposed Class Satisfies Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy at least one of the three conditions imposed by Rule 23(b).  Here, Lead Plaintiff moves for class certification under Rule 23(b)(3), which authorizes certification where: (1) the "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This action satisfies Rule 23(b)(3).

---

[7]      *See, e.g.*, *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 267-68 (S.D.N.Y. 2009); *Kelleher v. ADVO, Inc.*, No. 3:06CV01422(AVC), 2009 WL 2413362, at *3-*4 (D. Conn. Mar. 30, 2009); *Alstom*, 253 F.R.D. at 278.

### 1.      Common Questions of Law or Fact Predominate

"Class treatment is appropriate when issues common to class members predominate over those that affect them individually."  *Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010); *see also* Fed. R. Civ. P. 23(b)(3).  This Court has echoed the Supreme Court's acknowledgement that the predominance requirement "'is a test readily met in certain cases alleging . . . securities fraud.'"  *NYSE Specialists*, 260 F.R.D. at 75 (quoting *Amchem*, 521 U.S. at 625).  Indeed, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

And courts have recognized that common issues of law and fact will generally predominate in actions alleging that materially false representations were made to large groups of investors.  *See, e.g.*, *Darquea*, 2008 WL 622811, at *5 (holding that "a scheme to release material misrepresentations and omitting important investor information, resulting in artificially inflated prices. . . . constitutes a 'common course of conduct'") (quoting *Blech*, 187 F.R.D. at 107).  Thus, where, as here, a complaint alleges that defendants have made material misstatements, the issues of law and fact that flow from that conduct predominate over any individual issues, rendering class treatment appropriate:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Defendants' liability arises from their dissemination of allegedly material false and misleading statements during the Class Period.  The issues that predominate are whether Defendants' statements were materially false and misleading and whether Defendants knew or recklessly disregarded this fact.  Individual claimants would have to prove the same elements.  *See Darquea*, 2008 WL 622811, at *5 (observing that "each class member, if they were to bring individual actions, would be required to prove the existence of the alleged activities of the Defendants in order to prove liability").  As such, common questions of law or fact predominate over individual issues.

The only individual issues likely to be raised in the litigation of this class action relate to the amount of damages sustained by each member of the Class.  However, courts have uniformly held that "potential issues related to differential damages does not preclude class certification."  *Alstom*, 253 F.R.D. at 276.  Indeed, damages in a securities fraud action, such as this, can be and routinely are determined on a class-wide basis.  *See, e.g.*, *NYSE Specialists*, 260 F.R.D. at 74 ("Conflicts over damages, at this early stage in the litigation, need not defeat a motion for certification."); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 302 (S.D.N.Y 2003) ("When liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification.").

The Class here is also entitled to the fraud-on-the-market presumption of reliance, which is subject to class-wide proof.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).  The claims asserted under §10(b) and Rule 10b-5 rely on the fraud-on-the-market doctrine, where reliance is presumed, and plaintiffs are not required to prove awareness of any particular misstatement or omission.  *See id.* at 227; *see also In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 481 (2d Cir. 2008) (citing *Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 552 U.S. 148, 158-59

- 19 -

(2008)).  Courts in this Circuit apply the fraud-on-the-market doctrine's presumption of reliance where the company's securities traded in an efficient market.[8]  *Lapin*, 254 F.R.D. at 182.

Here, because the Company's stock traded on the NYSE, Lead Plaintiff is entitled to the presumption of market efficiency.[9]  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898 (SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006) ("At the class certification stage, the securities' trading record may create certain rebuttable legal presumptions about market efficiency.  If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient."), *aff'd*, 546 F.3d 196 (2d Cir. 2008).  Where a company's stock traded in an efficient market, as Wyeth's did here, "common questions predominate and class certification is routine."  *Schleicher*, 618 F.3d at 682.

---

[8]     The Supreme Court recently held that plaintiffs do not have to "establish loss causation at the certification stage to 'trigger the fraud-on-the-market presumption.'"  *Erica P. John Fund, Inc. v. Halliburton Co.*, __ U.S. __, 131 S. Ct. 2179, 2185-86 (2011); *id.* at 2186 ("Loss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory."); *see also Solomon Analyst*, 544 F.3d at 483 ("[P]laintiffs do not bear the burden of showing an impact on price.  The point of *Basic* is that an effect on market price is ***presumed*** based on the materiality of information and a well-developed market's ability to readily incorporate that information into the price of securities.") (emphasis added).

[9]     If Defendants attempt to rebut the presumption of market efficiency, Plaintiffs reserve their right to submit supplemental evidence on this issue.

In addition to assessing whether a stock traded on a national market, courts have adopted the *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), factors to evaluate market efficiency. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 94 (S.D.N.Y. 2009) (*Cammer* factors "are frequently used to determine whether a market is efficient"); *see also In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 574 (S.D.N.Y. 2008) ("To determine whether a market for a security is efficient, courts often look to the five factors described in *Cammer v. Bloom* . . . ."); *Alstom*, 253 F.R.D. at 280 (same). These factors are: (1) whether the stock trades at a high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file an SEC registration Form S-3; and (5) whether there are empirical facts showing a cause-and-effect relationship between unexpected events or financial releases and an immediate response in the stock price. *Cammer*, 711 F. Supp. at 1286-87.

The *Cammer* factors are satisfied here. First, Wyeth's stock traded at a high weekly volume during the Class Period – approximately 29.5 million shares traded each week. Smith Decl., ¶2. Second, at least 28 different securities analysts and/or brokerage firms followed Wyeth's stock during the Class Period. *Id.*, ¶3. Third, Wyeth was assigned a specialist on the NYSE (the functional equivalent on the NYSE of a market maker). *Id.*, ¶4. Fourth, in addition to the quarterly and annual SEC reports Wyeth filed during the Class Period, the Company was eligible to file an SEC registration Form S-3 and filed such forms on February 3, 2004 and March 22, 2007. *Id.*, ¶6. Finally, facts show a cause-and-effect relationship between certain unexpected corporate events or financial releases and an immediate response in Wyeth's stock price. *See id.*, ¶¶7-15. These factors more than sufficiently demonstrate Wyeth's stock traded on an efficient market during the relevant

period. Thus, reliance may be presumed and Lead Plaintiff satisfies the "predominance" requirement.

### 2. A Class Action Is Superior to the Other Available Methods for the Efficient Adjudication of This Controversy

Fed. R. Civ. P. 23(b)(3) sets forth the following factors to be considered by the Court when making its "superiority" determination:

(A) the class members' interest in individually controlling the prosecution . . . of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;

(C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

"'Courts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws.'" *NYSE Specialists*, 260 F.R.D. at 80 (quoting *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006)). Securities actions easily satisfy the superiority requirement of Rule 23 because: (i) absent a class action, Defendants and the Court face potentially thousands of individual lawsuits, all arising out of the same set of operative facts; (ii) the resolution of common issues alleged in one class action will result in efficient use of judicial resources and a single outcome that is binding on all defendants and class members; (iii) any administrative difficulties in handling potential individual issues that may arise in this litigation are less burdensome than the problems which are likely to arise in administering hundreds or thousands of separate actions; and (iv) because of the prohibitive expense of maintaining individual actions, denial of class certification here would effectively prevent numerous individuals from asserting their claims against Defendants and severely weaken the protections provided to investors under the federal securities laws. As a result, a class action is not only superior, but

- 22 -

perhaps the only feasible way to litigate the claims alleged in this action.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs to pool claims that would otherwise be uneconomical to litigate individually).

Thus, as the Second Circuit has recognized, a class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws, *i.e.*, precisely this case:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green*, 406 F.2d at 296; *see also NYSE Specialists*, 260 F.R.D. at 80 ("securities cases 'easily satisfy the superiority requirement of Rule 23'") (quoting *Blech*, 187 F.R.D. at 107).

The violations of the federal securities laws by Defendants caused economic injury to large numbers of geographically dispersed investors, making the cost of pursuing individual claims against well-financed adversaries, such as Wyeth, plainly impracticable.  The litigation of this controversy as a class action will adequately protect the interests of the class members.  In contrast, the "alternative" to a class action – thousands of separate individual actions – offers no practical recourse for most class members, and would indisputably burden the judicial system.

- 23 -

## V.     CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court grant its

Motion for Class Certification and, in doing so, certify the Class defined herein, designate the

Pipefitters Union Local 537 as Class Representative and appoint Robbins Geller as Class Counsel.

DATED:  October 21, 2011                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            TOR GRONBORG
                                            TRIG R. SMITH
                                            LAURIE L. LARGENT
                                            CHRISTOPHER D. STEWART


                                                    s/ LAURIE L. LARGENT
                                                  LAURIE L. LARGENT

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)
                                            torg@rgrdlaw.com
                                            trigs@rgrdlaw.com
                                            llargent@rgrdlaw.com
                                            cstewart@rgrdlaw.com

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            DAVID A. ROSENFELD
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com
                                            drosenfeld@rgrdlaw.com

                                            Lead Counsel for Lead Plaintiff

659118_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 21, 2011.

s/ LAURIE L. LARGENT
LAURIE L. LARGENT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: LLargent@rgrdlaw.com

659118_1

# Mailing Information for a Case 1:07-cv-10329-RJS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Chad Henry Atlas**
  catlas@stblaw.com

- **Michael Joseph Chepiga**
  mchepiga@stblaw.com,managingclerk@stblaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Lynn Katherine Neuner**
  lneuner@stblaw.com,managingclerk@stblaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`