UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

CITY OF LIVONIA EMPLOYEES'             :      Civil Action No. 1:07-cv-10329-RJS
RETIREMENT SYSTEM, On Behalf of Itself :
and All Others Similarly Situated,     :      CLASS ACTION

                            Plaintiff, :      **ECF CASE**

            vs.                        :      MEMORANDUM OF LAW IN SUPPORT
                                       :      OF LEAD PLAINTIFF'S MOTION FOR
WYETH, et al.,                         :      FINAL APPROVAL OF CLASS ACTION
                                       :      SETTLEMENT AND PLAN OF
                          Defendants.  :      ALLOCATION OF SETTLEMENT
—————————————————————— x      PROCEEDS

**TABLE OF CONTENTS**

Page

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND ......................................... 2

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE ....................................................................................................... 3

        A.    Settlements Are Favored and Encouraged.............................................. 3

        B.    The Settlement Is Presumptively Fair ................................................... 4

        C.    The Settlement Meets the Second Circuit Requirements for Approval ................. 5

              1.    The Complexity, Expense, and Likely Duration of the Litigation
                    Justifies the Settlement ................................................................. 5

              2.    The Reaction of the Class to the Settlement................................. 7

              3.    The Stage of the Proceedings and Discovery Completed............. 8

              4.    The Risk of Establishing Liability............................................... 10

              5.    The Risk of Establishing Damages............................................... 12

              6.    The Risks of Maintaining the Class Action Through Trial ....................... 14

              7.    The Ability of the Defendants to Withstand a Greater Judgment ............. 14

              8.    The Reasonableness of the Settlement in Light of the Best Possible
                    Recovery and the Attendant Risks of Litigation ........................ 15

IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................... 16

V.      CONCLUSION ................................................................................................. 18

797276_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978) ................................................................................... 16

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001) ................................................................................... 14

*Chatelain v. Prudential-Bache Sec.,*
    805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................... 14

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ......................................................................................... 4

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................... *passim*

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ................................................................................................ 12

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.,*
    343 F.3d 189 (2d Cir. 2003) .................................................................................... 11

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976) ................................................................................................ 11

*Heyer v. N.Y. City Hous. Auth.,*
    No. 80 Civ. 1196 (RWS), 2006 WL 1148689
    (S.D.N.Y. Apr. 28, 2006) ........................................................................................ 10

*Hicks v. Morgan Stanley,*
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) ........................................................................................... 6

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987)......................................................................... 15

*In re "Agent Orange" Prod. Liab. Litig.,*
    611 F. Supp. 1396 (E.D.N.Y. 1985),
    *aff'd in part and rev'd in part on other grounds,*
    818 F.2d 179 (2d Cir. 1987) .................................................................................... 17

797276_1

**Page**

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 Civ. 1597 (WHP), 2004 WL 2750089
  (S.D.N.Y. Dec. 2, 2004) ....................................................................................................4

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..........................................................................16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006) ................................................................................................15

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000),
  *aff'd sub nom. D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ..............................................................................................8

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
  No. 08 MDL 1963, 2012 WL 5465381
  (S.D.N.Y. Nov. 9, 2012) ................................................................................................10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..........................................................................................13

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) .........................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................5, 8, 17

*In re Indep. Energy Holdings PLC*,
  No. 00 Civ. 6689 (SAS), 2003 WL 22244676
  (S.D.N.Y. Sept. 29, 2003) ...............................................................................6, 12, 15, 16

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ..............................................................................3, 4, 7, 16

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) .....................................................................................10

*In re Novatel Wireless Sec. Litig.*,
  846 F. Supp. 2d 1104 (S.D. Cal. 2012) ..........................................................................13

**Page**

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................................................................*passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173 (RPP), 2008 WL 1956267
   (S.D.N.Y. May 1, 2008) .............................................................................14

*In re Wachovia Equity Sec. Litig.*,
   No. 08 Civ. 6171(RJS), 2012 WL 2774969
   (S.D.N.Y. June 12, 2012) ...........................................................................15

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .......................................................................14

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986)..........................................................13, 17

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) .................................................................10

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................16

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ..............................................................5

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...............................................................3, 4, 15

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ...................................................................17

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982) .........................................................................8

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990) ..............................................................17

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..........................................................6

**Page**

*Taft v. Ackermans,*
No. 02 Civ. 7951 (PKL), 2007 WL 414493
(S.D.N.Y. Jan. 31, 2007) .......................................................................... 3, 16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
No. 01-CV-11814 (MP), 2004 WL 1087261
(S.D.N.Y. May 14, 2004) ................................................................................ 10

*Trief v. Dun & Bradstreet Corp.,*
840 F. Supp. 277 (S.D.N.Y. 1993) ................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005) ............................................................................... 3

*Weinberger v. Kendrick,*
698 F.2d 61 (2d Cir. 1982) ......................................................................... 3, 17

*Whalen v. Hibernia Foods PLC,*
No. 04 Civ. 3182, 2005 WL 1799370
(S.D.N.Y. Aug. 1, 2005) .................................................................................. 11

*White v. NFL,*
822 F. Supp. 1389 (D. Minn. 1993) ................................................................ 16

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78j(b) ............................................................................................................. 12
§78u-4(a)(4) ....................................................................................................... 1

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................... 1
Rule 23(f) ............................................................................................... 6, 12, 14

## SECONDARY AUTHORITY

4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions*
§11.45 (4th ed. 2002) ........................................................................................ 8

- v -

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff, Pipefitters Union Local 537 Pension Fund, respectfully moves this Court for an order approving the proposed settlement of this class action (the "Litigation"), and approving the proposed Plan of Allocation of settlement proceeds.[1]

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Stipulation, Defendants have caused the sum of $67,500,000 in cash to be paid into an interest-bearing escrow account maintained on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Litigation.  This Settlement represents an excellent recovery for the Class particularly in light of the considerable expense, delay, and risks posed by continued litigation, including successfully opposing summary judgment, prevailing at trial, and litigating inevitable post-trial appeals.  As discussed below and in the accompanying Declaration of Tor Gronborg in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Award of Attorneys' Fees and Expenses and Lead Plaintiff's Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) ("Gronborg Decl."), the significant risks involved in taking this Litigation further and through trial, when measured against the immediate benefit of the Settlement, justify approval of this Settlement.

On November 20, 2012, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 114) ("Preliminary Approval Order"), which directed that a hearing be held on March 1, 2013 to determine the fairness, reasonableness, and adequacy of the Settlement. In accordance with the Preliminary Approval Order, the Notice of Proposed Settlement of Class

---

[1]    Unless otherwise noted, all capitalized terms used herein are defined in the November 7, 2012 Settlement Agreement (the "Stipulation").  Dkt. No. 112.

- 1 -

Action (the "Notice") was mailed to over 302,000 potential Class Members as of January 8, 2013. *See* Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl."), ¶¶3-10.

Also, the Notice, the Proof of Claim form, the Stipulation and its Exhibits, and the Preliminarily Approval Order were posted on the Claims Administrator's website, and pursuant to the Preliminary Approval Order a Summary Notice was published in *Investor's Business Daily* and over *Business Wire* on December 7, 2012. *See* Sylvester Decl., ¶¶12-13.

In light of their informed assessment of the strengths and weaknesses of the claims and defenses asserted, the considerable risks and delays associated with continued litigation and trial, and the significant settlement amount, Lead Plaintiff and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides an outstanding result for the Class. Accordingly, Lead Plaintiff respectfully requests that the Court approve this Settlement. Moreover, the Plan of Allocation, which was developed with the assistance of Lead Plaintiff's economics and damages experts, is fair and reasonable and, therefore, should also be approved by the Court.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The Court is respectfully referred to the accompanying Gronborg Declaration for a full discussion of the factual background and procedural history of the Litigation, the extensive litigation efforts of Lead Counsel, a discussion of the negotiations leading to this Settlement, and the reasons why the Settlement and Plan of Allocation are fair and reasonable and should be approved.

797276_1

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   Settlements Are Favored and Encouraged

The court may approve a "class action settlement if it is fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The evaluation of a proposed settlement requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116. While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). As stated by the Second Circuit in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'."

*Id.* at 691-92 (citation omitted).

**B.     The Settlement Is Presumptively Fair**

A strong initial presumption of fairness attaches to the proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Grp.*, 233 F.R.D. at 315; *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *1-*2 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted).

This initial presumption of fairness and adequacy applies in this case because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations with the assistance of a highly experienced mediator, the Honorable Layn R. Phillips (Ret.). Gronborg Decl., ¶¶4, 75. "So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). In addition, Lead Counsel was unquestionably fully informed of the merits and weaknesses of the case at the time the Settlement was reached. Lead Counsel had conducted an extensive factual investigation of Lead Plaintiff's claims, including significant document and deposition discovery from Defendants and third parties, and had retained and consulted with numerous experts and consultants. *See, e.g.*, Gronborg Decl., ¶¶45-64. Moreover, following the first phase of bifurcated discovery on the issues of materiality and statistical significance, the parties attended a face-to-face settlement and discovery

meeting where each side presented their respective positions on the merits of the case, along with supporting evidence and expert presentations. Thus, this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

**C.      The Settlement Meets the Second Circuit Requirements for Approval**

There are nine factors the Second Circuit has identified to determine whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).  All nine factors need not be satisfied.  Rather, the Court should look at the totality of these factors in light of the specific circumstances involved.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below and in the Gronborg Declaration, the Settlement meets each of the relevant criteria set forth above.

**1.      The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  In this case, the securities claims advanced by the Lead Plaintiff involve complex legal and factual issues. Lead Plaintiff claims that Defendants violated federal securities laws by making misleading statements to investors about one of Wyeth's leading drug candidates, Pristiq for the treatment of vasomotor symptoms ("VMS"), and failing to disclose safety concerns about the drug to investors.

797276_1

Proof of these claims would require, *inter alia*, extensive expert testimony, including testimony from experts with medical, pharmacological, and biostatistics expertise.

The legal issues proving materiality, scienter, loss causation, and damages are equally complex, and would also require extensive percipient and expert testimony. Here, as in other similar cases involving violations of the federal securities laws, "'[i]t is beyond cavil that continued litigation . . . would be complex, lengthy, and expensive, with no guarantee of recovery by the [C]lass [M]embers.'" *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (quoting *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993)); *see also In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003) (noting necessity of completing expert discovery, summary judgment briefing, joint pre-trial order, *in limine* motions, trial, and post-trial appeals weighed in favor of settlement).

Settling the Litigation at this time will undoubtedly spare all litigants the delay and expense of continued litigation. Many hours of the Court's time and resources required to see this case through trial will also be spared. Moreover, at the time of the Settlement, Defendants had filed a Rule 23(f) petition with the Second Circuit Court of Appeals. Had Defendants' position been accepted and granted, any potential recovery by the Class would have been in jeopardy. Even if the Class could obtain a larger judgment after a trial, the additional delay through likely post-trial motions and appeals could deny the Class any recovery for years, which would further reduce its value. *See Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further

- 6 -

costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The Settlement for $67,500,000, at this juncture, results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of trial. Therefore, Lead Plaintiff submits that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.     The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Grp.*, 233 F.R.D. at 311-12. Notices describing the nature of the Litigation and the terms of the Settlement, were distributed to over 302,000 potential Class Members. Sylvester Decl., ¶¶3-10. As of the date this motion was filed, *no* objections to the Settlement have been received, *no* institutional investors have opted out of the proposed Settlement, and *no* individual investors have opted out.[2] However, the Court-ordered deadline set for objections is January 28, 2013. Accordingly, if Lead Counsel receive any objections to the Settlement or Plan of Allocation, they will be addressed in Lead Plaintiff's reply brief scheduled to be filed on February 14, 2013.

---

[2]      As of the date of this filing, Lead Counsel and the Claims Administrator have received 47 requests from individuals to be excluded from the Litigation. None of these requests represent a valid opt out, as the individuals either stated that they did not acquire Wyeth common stock during the Class Period (and, thus, are not members of the Class) or failed to provide any information to establish whether they are eligible class members as required by the Notice (*i.e.*, number of shares purchased/sold during the Class Period and proper evidence of transactions during the Class Period).

- 7 -

### 3.    The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002).  As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The volume and substance of Lead Counsel's knowledge of this case are unquestionably adequate to support the Settlement.  In drafting a cogent well-pled complaint, that withstood Defendants' motion to dismiss and motion for reconsideration, Lead Counsel conducted an extensive investigation and informal discovery, including the: (i) review and analysis of filings made by, and/or concerning, Wyeth with the U.S. Securities and Exchange Commission ("SEC") and Food and Drug Administration ("FDA"); (ii) review and analysis of analyst conference calls concerning Wyeth and other pharmaceutical companies; (iii) review and analysis of analysts' reports concerning Wyeth and other pharmaceutical companies; and (iv) review and analysis of wire and press releases, public statements, news articles, and other publications disseminated by, and/or concerning, Wyeth.

Following denial of Defendants' motion to dismiss, Lead Plaintiff served document requests on Defendants and more than a dozen securities analysts and other third party entities with relevant information concerning Wyeth's activities during the Class Period. In response to these requests for documents, Defendants produced more than 1.3 million pages of documents, which were reviewed and analyzed by Lead Counsel. An additional 52,000 pages of documents were produced or provided by third parties, including financial analysts and the European Medicines Agency ("EMA"). Lead Counsel deposed three former/current Wyeth employees, including two Wyeth corporate representatives, deposed Defendants' market efficiency and damages expert, and prepared for over 20 additional depositions, including the deposition of each Defendant. The parties also engaged in a face-to-face meeting in June 2011 to address discovery issues and discuss potential settlement, during which each party presented their respective positions and evidence supporting their claims and defenses and had the opportunity to question each other's biostatistics consultants.

To assist Lead Counsel with the prosecution and analysis of this case, experts and consultants, including a physician, two biostatisticians, an FDA expert, and economics and damages experts were retained and consulted. With their assistance, Lead Counsel were able to critically analyze document discovery, determine additional areas of investigation to pursue, meet with defense counsel and the mediator to discuss the issues in the case, and draft a cogent and persuasive mediation brief, which set forth Lead Plaintiff's theory of its case, and the facts supporting its position.

The extensive investigation and discovery that Lead Counsel conducted, therefore, provided a strong basis to assess the strengths and weaknesses of their case, the parties' positions on liability and damages, and to knowledgeably assess a possible settlement. Thus, this Litigation had advanced to a stage where the parties certainly "'have a clear view of the strengths and weaknesses of their

- 9 -

cases.'" *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at

*3 (S.D.N.Y. May 14, 2004) (citation omitted); *see also Heyer v. N.Y. City Hous. Auth.*, No. 80 Civ.

1196 (RWS), 2006 WL 1148689, at *3-*4 (S.D.N.Y. Apr. 28, 2006) (although only limited

discovery was completed before settlement negotiations began, the familiarity of counsel for all

parties with the case justifies settlement). Therefore, the Court should find that this factor further

supports approval of the Settlement.

### 4.   The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class,

including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See*

*Grinnell*, 495 F.2d at 463. While Lead Plaintiff believes it could survive Defendants' anticipated

motion for summary judgment, it recognizes that ultimate success is not assured, and further believes

that this substantial Settlement, when viewed in light of the risks of proving liability, is fair,

adequate, and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53

(S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized

such litigation to be '"notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59

F.R.D. 525, 528 (S.D.N.Y. 1973)); *In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,

No. 08 MDL 1963, 2012 WL 5465381, at *4 (S.D.N.Y. Nov. 9, 2012) ("As a general rule, securities

class actions are 'notably difficult and notoriously uncertain' to litigate.").

Despite the strengths of Lead Plaintiff's case, it faced numerous hurdles to establishing

liability. This Litigation involves claims for relief under federal securities laws and, to prevail, Lead

Plaintiff must demonstrate that Defendants made misstatements or omissions of material fact with

scienter in connection with the purchase of securities and that the Defendants intentionally engaged

797276_1

in this conduct for the purpose of misleading investors.[3] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

Defendants have maintained throughout the Litigation that the evidence would demonstrate that they did not make any misleading statements or omissions and that they did not act with the requisite state of mind.   While Lead Counsel believe that Defendants made misstatements and omissions of material fact, and that evidence produced by Defendants would support an inference of scienter, some of the evidence might also be interpreted as supporting Defendants' position that their statements were not actionable under the federal securities laws.   Specifically, Defendants continuously maintained that there was no intent to deceive shareholders and that they believed Pristiq was a safe, effective treatment for VMS.  Defendants also maintained that during the Class Period cardiovascular safety data was fully disclosed and that they reasonably believed that the allegedly omitted data was not material to the safety of Pristiq as it was not statistically significant.

Defendants also were adamant that their Class Period stock sales were insufficient to support scienter because they either did not sell any stock, sold a small percentage of their total holdings, or sold their shares as they were retiring from Wyeth.  Defendants also argued that Lead Plaintiff could not establish any plausible motive to support its allegations that Defendants knowingly committed securities fraud.

Even if Defendants' defenses could be overcome, Lead Plaintiff would have to make the requisite showings of loss causation.  *See, e.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath*

---

[3]    Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182, 2005 WL 1799370, at *2 (S.D.N.Y. Aug. 1, 2005) (citation omitted).

*Grp., Inc.*, 343 F.3d 189, 196-97 (2d Cir. 2003) (plaintiffs required to plead and prove loss causation and proximate causation). Lead Plaintiff faced a significant hurdle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiff and the Class to suffer economic loss. Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." As they did in their Rule 23(f) petition, at summary judgment and trial, Defendants would have argued that any losses suffered by Class Members on the purchases of Wyeth common stock were completely attributable to other factors and not the alleged misstatements.

By the time the parties agreed on the proposed Settlement, Lead Counsel had come to the conclusion that the evidence indicated that the defenses described above might have a certain jury appeal, and would render the inherently difficult burden of proving the elements of Lead Plaintiff's claims as to all of the Defendants even more difficult. While Lead Plaintiff remained confident in its ability to ultimately prove its claims and to counter any asserted affirmative defenses, the risks of this Litigation being dismissed at the summary judgment stage, or of losing at trial, when weighed against the immediate and substantial benefits of settlement, established that the Settlement is in the best interest of the Class.

### 5.     The Risk of Establishing Damages

Lead Plaintiff also faced substantial risk in proving damages. *See Indep. Energy*, 2003 WL 22244676, at \*3-\*4 (noting difficulty of proving damages in securities cases). In order to prevail on its §10(b) claims, Lead Counsel would be required to prove that the Defendants' misleading statements and omissions inflated the price of Wyeth stock, and would also be required to prove the amount of the artificial inflation. Lead Counsel, with the assistance of their economics and damages experts, have calculated the artificial inflation in the market price of Wyeth stock, that, in their

- 12 -

opinion, is attributable to the alleged wrongdoing. This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable. As such, its viability as an actual calculation for damages could be affected by many factors that might arise in continued litigation, such as Defendants' rebuttals and defenses to Lead Plaintiff's damage calculations and expert testimony.

The proof of damages is a complex matter that would require the presentation of expert testimony. As a result, Lead Counsel knew that the Class would ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiff's damages model is admissible – and only then may a jury determine whether Lead Plaintiff's or Defendants' model is more accurate. The Class was by no means assured of a ruling in their favor. *See, e.g., In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1107 (S.D. Cal. 2012) (loss causation expert's testimony was excluded because he employed the wrong legal standard in performing his loss causation analysis). It is possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or find Defendants' expert more persuasive.[4] As a result of the aforementioned considerations, the

_____

[4]     *See, e.g., PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

- 13 -

likelihood of proving damages, even assuming the Class prevailed on the liability issues, is difficult. As a result, this factor also weighs in favor of the Settlement.

### 6.      The Risks of Maintaining the Class Action Through Trial

Although the Court certified the Class on September 18, 2012, if the Litigation had not settled, there would be no assurance of maintaining class status through trial, since courts may always exercise their discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). In fact, at the time the Settlement was reached, Defendants' Rule 23(f) petition for interlocutory appeal was pending before the Second Circuit. The Settlement avoids any uncertainty with respect to this issue.

### 7.      The Ability of the Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in a settlement can be relevant to whether a settlement is fair. *Grinnell*, 495 F.2d at 463. The fact, however, that a defendant is able to pay more than it offers in settlement, does not, standing alone, indicate that the settlement is unreasonable or inadequate. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before  a settlement can be found

- 14 -

adequate"); *In re Wachovia Equity Sec. Litig.*, No. 08 Civ. 6171(RJS), 2012 WL 2774969, at *5 (S.D.N.Y. June 12, 2012) (same).

Wyeth is now owned by Pfizer Inc. While it is apparent that Pfizer has sufficient resources to pay a sum larger than the settlement amount, as discussed above, as a practical matter the prospects of recovering a substantially greater sum would have been offset by the inevitable post trial motions and appeals Defendants would likely pursue following any judgment. Additionally, settlement eliminates the risk of collection. Defendants have paid the Settlement Fund into escrow pursuant to the Stipulation which is already earning interest for the Class.

### 8.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two factors are satisfied here. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 WL 22244676, at *4 (noting few cases tried before a jury result in full amount of damages claimed). In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). There are numerous risks involved in litigation – especially litigation that involves the

- 15 -

complex issues inherent in securities class actions.  In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial, and the appellate process that would most likely follow, the fairness of a substantial settlement is clearly apparent. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).  Here, the Settlement of $67,500,000 in cash represents an excellent recovery for the Class, given the risks of proceeding further in this matter.

Considering the probability of lengthy litigation in the absence of a settlement, the risk that the Class might not have been able to succeed on liability, and the possibility that damages awarded by a jury could have been lower than those demanded by the Class (or no recovery at all), the Settlement is an excellent recovery.

In sum, the *Grinnell* factors, individually and collectively, weigh strongly in favor of the Settlement being approved.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

If the Court approves the proposed Settlement, upon completion of the claims filing process, the Net Settlement Fund will be distributed to Members of the Class according to the Plan of Allocation set forth in the Notice.  "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133; *Luxottica Grp.*, 233 F.R.D. at 316-17. *See also Taft*, 2007 WL 414493, at *9.  As with the Settlement, the opinion of experienced and informed counsel carries considerable weight. *Indep. Energy*, 2003 WL 22244676, at *4-*5.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). Numerous courts have approved distribution plans that allocate the settlement proceeds according to the relative strengths and weaknesses of the various claims. *See Warner Commc'ns*, 618 F. Supp. at 745; *Weinberger*, 698 F.2d at 78. Thus, "if one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). Moreover, there is no requirement that a settlement must benefit all class members equally. *See Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery).

The decisions cited above acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. Here, experienced and informed counsel formulated the Plan of Allocation with their economics and damages experts, which involved careful assessments of the strengths and weaknesses of Lead Plaintiff's claims, as well as assessments of the manner in which the damages should be allocated to the Class in light of those strengths and weaknesses. As a result, the Plan of Allocation clearly has a "'reasonable, rational basis'" and should be approved by the Court. *Global Crossing*, 225 F.R.D. at 462 (citation omitted).

797276_1

## V.    CONCLUSION

The $67,500,000 Settlement reached in this Litigation is an excellent result that provides an

immediate and substantial benefit for the Class.  For the reasons set forth herein and in the Gronborg

Declaration, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement and Plan of

Allocation are fair, reasonable, and adequate, and respectfully request the Court grant approval of the

Settlement and Plan of Allocation.

DATED:  January 10, 2013                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                            TOR GRONBORG
                                            TRIG R. SMITH
                                            LAURIE L. LARGENT
                                            CHRISTOPHER D. STEWART
                                            SUSANNAH R. CONN


                                                    s/ Tor Gronborg
                                            TOR GRONBORG

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)
                                            torg@rgrdlaw.com
                                            trigs@rgrdlaw.com
                                            llargent@rgrdlaw.com
                                            cstewart@rgrdlaw.com
                                            sconn@rgrdlaw.com

- 18 -

797276_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiff

797276_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 10, 2013.

s/ Tor Gronborg
TOR GRONBORG

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:TorG@rgrdlaw.com

797276_1

# Mailing Information for a Case 1:07-cv-10329-RJS

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rae Caroline Adams**
  radams@stblaw.com,mwasserman@stblaw.com

- **Susannah R Conn**
  sconn@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Lynn Katherine Neuner**
  lneuner@stblaw.com,managingclerk@stblaw.com

- **Bryce Allan Pashler**
  bpashler@stblaw.com,managingclerk@stblaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **George S Wang**
  gwang@stblaw.com,managingclerk@stblaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)