UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CITY OF LIVONIA EMPLOYEES'
RETIREMENT SYSTEM, On Behalf of Itself
and All Others Similarly Situated,

                  Plaintiff,

     vs.

WYETH, et al.,

                  Defendants.

———————————————————— x

: Civil Action No. 1:07-cv-10329-RJS
:
: CLASS ACTION
:
: **ECF CASE**
:
: REPLY MEMORANDUM OF LAW IN
: SUPPORT OF LEAD COUNSEL'S MOTION
: FOR AN AWARD OF ATTORNEYS' FEES
: AND EXPENSES AND LEAD PLAINTIFF'S
: EXPENSES PURSUANT TO 15 U.S.C. §78u-
: 4(a)(4)

813227_1

Lead Plaintiff, Pipefitters Union Local 537 Pension Fund, respectfully submits this memorandum in further support of the Motion for an Award of Attorney's Fees and Expenses and Lead Plaintiff's Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) (Dkt. Nos. 115, 117).[1]

## I.    INTRODUCTION

In accordance with the Court's Order dated November 14, 2012, the Notice has been mailed to more than 499,000 Class Members, posted on the internet and summary notice published in *Investor's Business Daily* and over the *Business Wire*. The Notice advised that Lead Counsel was seeking attorneys' fees of 24.5% of the Settlement Fund and expenses not to exceed $650,000, and that the Lead Plaintiff was seeking up to $20,000 in expenses.[2] The response from the Class has been overwhelmingly positive. Not a single Class Member objected to the $67,500,000 settlement. Not a single Class Member objected to Lead Counsel's or Lead Plaintiff's requested expenses. Not a single institutional investor objected to the requested attorneys' fees. Indeed, the only objection to the requested attorneys' fees is from serial filer Theodore Frank and is largely premised on the notion that there is no risk involved in litigating securities class action cases and counsel should never be awarded more than their submitted lodestar. Both factually and legally, Mr. Frank is mistaken.[3]

---

[1]    Unless otherwise noted, all capitalized terms used herein are as defined in the November 7, 2012 Settlement Agreement. Dkt. No. 112.

[2]    Following mailing and publication of notice, Lead Counsel and Lead Plaintiff have applied for expenses of $461,050.19 and $4,526.25, respectively. *See* Dkt. Nos. 122 and 120.

[3]    Under the moniker "Center for Class Action Fairness," Mr. Frank has filed more than 40 objections to class action settlements and requests for attorneys' fees in the past three years. Here, the objection is ostensibly brought on behalf of Julia Petri. Mrs. Petri, whose husband has previously stood in as an objector for Mr. Frank, did not purchase any Wyeth securities on the open market during the Class Period, but represents that she did acquire approximately 17 shares of Wyeth common stock through dividend reinvestments. *See* Exhibit 1 to Dkt. No. 128-1.

II.     **THE REQUESTED FEE IS FAIR, REASONABLE AND SUPPORTED BY THE *GOLDBERGER* FACTORS, LEAD PLAINTIFF AND THE CLASS**

When awarding fees in common funds cases, the Second Circuit has recognized that the percentage-of-the-fund method "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted). In *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000), the Second Circuit noted that "the lodestar method prove[s] vexing" and results in "an inevitable waste of judicial resources." Subsequently the Second Circuit has increasingly favored the percentage-of-the-fund method for awarding attorneys' fees. *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Just last month, in rejecting an objection to a 33-1/3% fee in a securities class action, the Second Circuit confirmed that "***the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class***." *Hayes v. Harmony Gold Mining Co. Ltd.*, No. 12-118-cv, 2013 WL 322921, at *2 (2d Cir. Jan. 29, 2013) (emphasis added).

The requested fee here is well within (if not below) the range of percentage-of-the-fund awards courts in this Circuit, and throughout the country, have found reasonable, and is strongly supported by the factors set forth in *Goldberger*. Not only is the requested fee substantially lower than the 33-1/3% fee just affirmed by the Second Circuit, but it has been independently assessed and approved by a sophisticated institutional investor, Lead Plaintiff Pipefitters Union Local 537 Pension Fund, that was intimately involved in the prosecution of the case. And, critically, Class Members have overwhelmingly supported Lead Counsel's fee request. While institutional investors, including private and governmental pension funds, held more than 75% of Wyeth stock during the Class Period, not a single one of these investors objected to the proposed fee. In fact, not a single investor

- 2 -

who actually purchased Wyeth shares on the open market during the Class Period has objected to the requested fees. This positive response weighs strongly in favor of awarding the requested 24.5% fee.

A.   **The *Goldberger* Factors Support Lead Counsel's Fee Request**

Having accepted that the percentage-of-the-fund is a preferred means of awarding attorney's fees, the Second Circuit has set forth six factors for district courts to consider in determining the appropriate percentage to award counsel. *Goldberger*, 209 F.3d at 50. As detailed in Lead Counsel's opening memorandum, each of these factors support a 24.5% fee award.

*Magnitude and complexity of the action*: There is no real dispute about both the factual and legal complexity of this litigation. Factually, the case focused on the analysis and interpretation of cardiovascular and hepatic side effects during clinical trial testing of the drug Pristiq for VMS. Assessing and prosecuting the alleged fraud required an understanding of, *inter alia*, medical conditions related to cardiovascular and hepatic side effects, the pharmacology of serotonin-norepinephrine reuptake inhibitor (SNRI) class drugs, the use of biostatistics in clinical trials, and the FDA's risk assessment process. Legally, as the Court is aware, counsel addressed novel issues regarding statistical significance, materiality and loss causation, in addition to confronting the long-recognized complexity of pleading and proving violations of the federal securities laws. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (courts have long recognized that securities class litigation is "'notably difficult and notoriously uncertain'") (citation omitted).

*Litigation risks*: There should also be no dispute about the risks involved in this litigation. While, as discussed below, Mr. Frank suggests that there are no risks in *any* case involving securities fraud, Lead Plaintiff, Lead Counsel and the Class faced a substantial risk of no recovery at every step

- 3 -

of this litigation.  Notably, this was not a case where the Defendants issued a restatement or admitted to any wrongdoing.  It was not a case where the SEC or any other governmental agency launched an investigation of, or reached a settlement with, the Defendants.  *Compare Goldberger*, 209 F.3d at 53-54 ("counsel benefitted from the spadework done by federal authorities during the criminal and civil actions brought against" defendants).  In fact, no firm other than Lead Counsel even filed a complaint against the Defendants and no one other than Lead Counsel sought to lead this prosecution.

Evaluating this case before filing involved substantial investigation and working with medical and economics experts.  Thereafter, at both the motion to dismiss and class certification stage, Defendants identified substantial arguments regarding materiality, loss causation, and damages that they intended to raise at summary judgment and trial and which, if successful, would result in no recovery whatsoever for the Class.  Defendants also had no intention of conceding the elements of falsity or scienter and would have wielded the fact that Pristiq was ultimately approved by the FDA (for the MDD indication) as a club to bludgeon Lead Plaintiff's arguments.  At best, there would have been a battle of economics experts – with Defendants' nationally-recognized expert opining that the damages to the Class in this case were zero – and the significant risk that the jury would credit the opinion of Defendants' expert.

***Quality of representation***: The quality of Lead Counsel's representation is best assessed in light of the results obtained for the Class.  In a case in which no other firm and no governmental agency filed a complaint, Lead Counsel recovered $67,500,000 for the Class.  It is safe to say that, but for Lead Plaintiff and Lead Counsel's diligence in investigating, bringing and prosecuting this case, the Class would have recovered nothing.  The Court has had the opportunity to assess that diligence, as well as the quality, thoroughness, and professionalism of Lead Counsel's work.  That

- 4 -

Lead Counsel prosecuted this action and achieved the settlement in the face of a vigorous, well-financed and determined defense by experienced counsel at Simpson Thacher & Bartlett LLP further confirms the exceptional quality of representation here.[4]

*Comparable fee awards*: As set forth in the opening memorandum, courts in this Circuit regularly approve fee awards of 30% or more in securities class action settlements like the one here, and the Second Circuit recently affirmed a 33-1/3% fee award. *See Hayes*, 2013 WL 322921. The average fee awarded in securities class actions that settle between $25 and $99.9 million, including cases that settle before motion to dismiss or any discovery, is 27%. *See* Exhibit 2 to Docket No. 118 at Figure 26 (the "2011 NERA Report"). Particularly in light of the fact that Lead Counsel is the only firm that pursued this litigation, the 2011 NERA Report demonstrates that the market, like the Class Members, supports the requested 24.5% fee request.

*Time and labor expended by counsel*: To prevent windfall awards where little work was done, the fifth *Goldberger* factor permits courts to consider the time and labor expended – a lodestar "cross-check." While the Second Circuit has increasingly adopted the percentage-of-the-fund method of awarding fees and recognizes that an emphasis on lodestar encourages inefficiency, this factor also supports Lead Counsel's fee request. Lead Counsel here collectively spent over 6,800 hours prosecuting this case, representing a lodestar of $3,909,020.75, and there has been no dispute

---

[4]     In his objection, Mr. Frank claims that this case was "lightly litigated" because there were only 111 docket entries. *See* Objection and Notice of Objection of Julia Petri ("Frank Obj."), at 1 (Dkt. No. 128). Mr. Frank fails to grasp (or refuses to recognize) that the effort involved in litigating a case such as this one cannot be summed up by a simple count of the docket entries. Indeed, as this Court is aware, counsel for both the Class and Defendants litigated and resolved numerous complex issues, including those involving the motion to dismiss, bifurcation of discovery and summary judgment, through letter briefing and direct dialogue. That professional relationship, fostered by the Court, avoided endless motion practice and is an example of the quality of representation here.

that these hours were both necessary and efficiently spent in achieving the recovery for the Class. The resulting multiplier of 4.2, if the Court awards a 24.5% fee, is well within the range of multipliers awarded in this Circuit. *See, e.g., In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts"); *In re ECVI Career Colls. Holding Corp. Sec. Litig.*, No. 05 civ 10240 (CM), 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2007) ("'lodestar multipliers of nearly 5 have been deemed "common" by courts in this District.'") (citation omitted). Particularly where, as here, the case has been efficiently litigated and a 24.5% fee is below the average awarded in similar cases, the time and labor expended by Lead Counsel supports the requested fee.

***Public Policy Considerations***: Fee awards reflecting the risks taken and results achieved by counsel assure that victims of securities fraud continue to be represented by skilled counsel with the resources to take on the largest corporations and defense firms. That is especially true in cases like this one, where no governmental agency pursued the alleged fraud and Lead Counsel is the only firm that was willing to undertake the risks necessary to represent the Class.

## B.    The Frank Objection Provides No Basis for Reducing the Fee

The lone objection to the proposed fee was brought by Mr. Frank, a frequent critic of class action litigation.[5] Objections by Mr. Frank have previously been described as "'long on ideology and short on law.'" *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010). This one is no different. Mr. Frank generically argues that securities class actions are risk free and

---

[5]    In addition to Mr. Frank's objection, Lead Counsel also received a letter from Kenneth A. Kuhn. Setting aside Mr. Kuhn's various conspiracy theories and insults, he has failed to identify that he is a Member of the Class or has standing to object, identifying no stock purchases and indicating only that he "***held*** 200 shares of Wyeth common stock" during the Class Period.

- 6 -

insists that any lodestar multiplier for counsel in these cases would be inappropriate.  He fails to consider the majority of the *Goldberger* factors, let alone the complexity and risks of this particular case.  Accordingly, Mr. Frank's objection provides no basis for rejecting the requested 24.5% fee.

In an argument he cuts-and-pastes from one objection to another, Mr. Frank asserts that there is no real risk in prosecuting securities fraud claims.  Frank Obj. at 4-11.  First, Mr. Frank assumes that counsel incur few costs prior to motion to dismiss.  *Id*. at 6.  In fact, as set forth in the Declaration of Tor Gronborg (Dkt. No. 119), Lead Counsel here engaged in a significant pre-filing investigation that included identifying and interviewing former Wyeth employees, locating and reviewing regulatory filings regarding the Pristiq clinical trials and consulting with medical and economics experts.  Second, while Mr. Frank brushes aside the risk of dismissal, the strict standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") mean that approximately 50% of securities class actions filed are dismissed before discovery is permitted.  *See* 2011 NERA Report, Figure 16 (identifying that of cases filed in 2007, 40.9% were dismissed and 39.4% were settled).[6] Third, Mr. Frank incorrectly assumes that there are few risks to counsel after surviving a motion to dismiss.  The 2012 NERA Report, however, identifies that nearly 14% of decisions on class certification in securities cases deny certification, 58% of summary judgment motions brought by defendants are fully or partially granted and of those cases that reach a trial verdict, 48% of the

---

[6]     A more recent study by National Economic Research Associates, *Recent Trends in Securities Class Action Litigation: 2012 Mid-Year Review* ("2012 NERA Report"), available at http://www.nera.com/67_7799.htm, identifies that of the securities cases resolved in 2011, 55% were dismissed, and that during January 2000-June 2012 motions to dismiss were fully denied in only 30.3% of cases.  *See* 2012 NERA Report at Figures 22 and 17.

verdicts were fully for defendants and another 22% were partially for defendants.  2012 NERA Report, Figures 18, 20 and 38.[7]

While Mr. Frank draws no distinction between settlements, regardless of how small or large, and piles assumptions on top of assumptions to generate an array of charts that conclude (surprise) that no lodestar multiplier is ever appropriate, his own arguments demonstrate the heightened risks faced by Lead Counsel in this case.  He argues that the firms which prosecute securities class actions have "some sense which cases are likelier to succeed than others" and "can pick and choose which cases to put resources into, and will naturally choose the cases that are more likely to have a large settlement."  Frank Obj. at 6, 7.  Assuming *arguendo* that his contention is correct, the results obtained by Lead Counsel are all the more remarkable given that no other firm filed a complaint on behalf of Wyeth investors and no firm other than Lead Counsel moved to prosecute the case or represent the Class.  By Mr. Frank's calculation, that means that every other firm decided that this case was too risky to devote any resources to and no one foresaw that a settlement of $67,500,000 – in the top 14% of securities class action settlements – was possible.  That Lead Counsel would devote the time and resources to a case that others saw as too risky to prosecute only serves to support the requested fee.[8]

---

[7]    Mr. Frank points to dicta in *Goldberger* to suggest that there is little risk of recovery in securities class actions.  Frank Obj. at 4-5.  That dicta, however, was premised on a law review article written before the passage of the PSLRA and the adoption of significantly higher standards to plead and prove violations of the securities laws.

[8]    Mr. Frank argues that "there is no reason not to bind class counsel to the results that the marketplace would have produced."  Frank Obj. at 8.  Lead Counsel concur.  Here, that marketplace is reflected in the average fee award for similarly sized settlements.  And, as discussed above, the average award for securities cases with settlements of $25 to $99.9 million is 27% – significantly higher than the fee requested by Lead Counsel and supported by the Lead Plaintiff.

813227_1

Mr. Frank's objection also suffers from his belief that the lodestar cross-check is of primary importance in determining a fee award and that any multiplier here would be impermissible. Frank Obj. at 3-4, 8, 11-12. As discussed above, the lodestar cross-check is only one of the *Goldberger* factors and, subsequent to *Goldberger*, the Second Circuit has repeatedly emphasized that using the percentage-of-the-fund approach to fee awards promotes efficiency and aligns the interests of counsel with those of the class. Moreover, as set forth above, Mr. Frank's claim that lodestar multipliers of more than two are impermissible after *Goldberger* is incorrect. The multiplier here is but one of the factors to consider in making the fee award, and one that supports the requested 24.5% fee.[9]

Finally, Mr. Frank tries to diminish the $67,500,000 settlement, labeling it a "nuisance settlement" and an "unexceptional result[]." Frank Obj. at 11. Having never prosecuted a securities fraud case and without any apparent insight into the allegations here, Mr. Frank discounts the settlement simply because it does not add up to the maximum theoretical damages Lead Plaintiff might have achieved if it had fully prevailed at every stage of the litigation. However, the likelihood of achieving the maximum theoretical damages was extremely small given the significant risks in this case. Indeed, at the motion to dismiss stage, the Court had already dismissed numerous allegations pursuant to the PSLRA's safe harbor provision. Dkt. No. 46 at 6. Nevertheless, Lead

---

[9] There is also no merit to Mr. Frank's suggestion that lodestar multipliers are inappropriate as a result of the Supreme Court's decision in *Perdue v. Kenny A.*, ___ U.S. ___, 130 S. Ct. 1662 (2010). *Perdue* was not a common fund case, and was not governed by the PSLRA which expressly authorizes awarding a percentage of the recovery as an attorneys' fee. *See, e.g., In re Apollo Group Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 n.1 (D. Ariz. Apr. 20, 2012) (explaining "'the [*Perdue*] Court did not address applying risk percentage factors in common fund cases'" and noting "'that while it is not appropriate to apply risk percentage factors in statutory fee cases, the same concerns are not present in common fund cases'") (citations and emphasis omitted).

813227_1

Counsel secured a substantial recovery that the Class can benefit from now. While Mr. Frank claims the "case was just barely not frivolous" (Frank Obj. at 11), the result achieved by Lead Counsel demonstrates otherwise. The $67,500,000 settlement is nearly eight times the median securities fraud settlement in 2011, and only 14% of all cases that have settled in the past five years have settled for more than $50,000,000. 2011 NERA Report, Figures 22 and 23. *See also* 2012 NERA Report, Figure 26 (identifying the average securities fraud settlement in 2011 was $7.5 million and in 2012 was $7.9 million). Given that over 50% of securities fraud cases are ultimately dismissed, the settlement here is almost certainly in the top 5% of recoveries made in cases of this type. A recovery of this magnitude is all the more remarkable given that it would not have occurred at all absent Lead Counsel's willingness to investigate and pursue the allegations. With their interests directly aligned with those of the Class, Lead Plaintiff and Lead Counsel obtained $67,500,000 for damaged Wyeth investors, a recovery that is neither frivolous nor a nuisance settlement.[10]

## III.   CONCLUSION

Based on the foregoing and the overwhelming support of Class Members, Lead Counsel and Lead Plaintiff respectfully request that their requested expenses of $461,050.19 and $4,526.25, respectively, and Lead Counsel's requested attorneys' fees of 24.5% be awarded by the Court.

---

[10]    As an "aside," Mr. Frank complains that the fee request is improper because the PSLRA purportedly requires the fee percentage to be calculated after the deduction of expenses. Frank Obj. at 3 n.2. The vast majority of courts in PSLRA cases, however, award fees as a percentage of the gross, not net, settlement fund. Indeed, in *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, Civil Action No. 1:07-cv-00909-RJS (S.D.N.Y. Mar. 17, 2011), *In re Noah Education Holdings Ltd. Sec. Litig.*, Civil Action No. 1:08-cv-09203-RJS (S.D.N.Y. May 27, 2011) and *In re Orion Sec. Litig.*, Civil Action No. 1:08-cv-01328-RJS (S.D.N.Y. Apr. 14, 2011) this Court awarded fees as a percentage of the gross settlement amount. *See* Dkt. Nos. 118-7, 118-8, 118-9.

813227_1

DATED:  February 14, 2013                Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         TOR GRONBORG
                                         TRIG R. SMITH
                                         LAURIE L. LARGENT
                                         CHRISTOPHER D. STEWART
                                         SUSANNAH R. CONN


                                                  s/ Tor Gronborg
                                         _____
                                                TOR GRONBORG

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)
                                         torg@rgrdlaw.com
                                         trigs@rgrdlaw.com
                                         llargent@rgrdlaw.com
                                         cstewart@rgrdlaw.com
                                         sconn@rgrdlaw.com

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         drosenfeld@rgrdlaw.com

                                         Lead Counsel for Lead Plaintiff

- 11 -

813227_1

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 15, 2013.

s/ Tor Gronborg
TOR GRONBORG

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: torg@rgrdlaw.com

813227_1

# Mailing Information for a Case 1:07-cv-10329-RJS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rae Caroline Adams**
  radams@stblaw.com,mwasserman@stblaw.com

- **Susannah R Conn**
  sconn@rgrdlaw.com

- **Theodore H Frank**
  tedfrank@gmail.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Lynn Katherine Neuner**
  lneuner@stblaw.com,managingclerk@stblaw.com

- **Bryce Allan Pashler**
  bpashler@stblaw.com,managingclerk@stblaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **George S Wang**
  gwang@stblaw.com,managingclerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

*City of Livonia Employees' Retirement System v. Wyeth, et al.*
Civil Action No. 1:07-cv-10329-RJS

MANUAL NOTICE LIST

Kenneth A. Kuhn
3540 Valley Circle
Vestavia, AL  35243