UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICAL
DOC #: _____
DATE FILED: 8-7-13

CITY OF LIVONIA EMPLOYEES'
RETIREMENT SYSTEM,

               Plaintiffs,

   -v-

WYETH, *et al.*,

               Defendants.

No. 07 Civ. 10329 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

On March 1, 2013, the Court held a fairness hearing to review the pending class settlement

in this action. Prior to the hearing, Wyeth stock owner Julia Petri[1] filed an objection asserting that

the requested attorneys' fees were excessive and that the proposed minimum distribution threshold

was discriminatory.[2] (*See* Doc. No. 128.) At the hearing, the Court approved the fairness of the

settlement and the requested costs, but reserved on the issues of fees and the minimum

distribution threshold. (*See* Tr. 42:23-43:1.) The Court also ordered Lead Counsel to submit a

letter stating the number of claims that would be denied under the proposed threshold. (*See* Tr.

43:1-5.) In the ensuing weeks, the Court received the requested letter, as well as multiple letters,

attached to this Order, concerning Petri's standing to pursue her objections. (*See* attached.)

Specifically, Lead Counsel asserted that Petri lacked standing because she did not submit a proof

---

[1] Petri was represented by Theodore Frank of the Center for Class Action Fairness. (*See* Obj. of Julia Petri, dated Jan. 25. 2013, Doc. No. 128 ("Obj."), at 17.)

[2] The Court also received an objection from Kenneth A. Kuhn, who asserted that the settlement was "rigged." (*See* attached.) However, while Mr. Kuhn claimed to have *held* Wyeth stock during the class period, he did not claim to have acquired or sold the stock during that period. Moreover, Mr. Kuhn did not substantiate his claim of ownership. Accordingly, Mr. Kuhn lacked standing to object, and the Court did not consider his submission. (*See* Tr. of Fairness Hearing, dated Mar. 1, 2013 ("Tr."), at 4:1-6, 16:9-17.)

of claim and, as a result, lacked interest in the impact of the requested attorneys' fees and proposed minimum distribution threshold on the settlement fund. For the reasons stated below, the Court concludes that Petri lacks standing to object. However, even if Petri had standing, the Court would conclude that her objections are without merit. Accordingly, the Court finds that the requested fees and proposed threshold are – in large part – reasonable.

## I. STANDING

To have Article III standing, "a would-be litigant must have sustained a palpable injury that is likely to be redressed by a favorable decision." *State of N.Y. v. Reebok Int'l Ltd.*, 96 F.3d 44, 47 (2d Cir. 1996). That is, to pursue a claim, the putative party must have suffered an "injury-in-fact" that "can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). It is beyond cavil that all class members have such an interest when objecting to the fairness of a proposed settlement. *See Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002). By contrast, class members who decline to participate in a settlement fund may lack standing to pursue ancillary objections, such as the amount of requested fees, if the class member cannot establish an interest in the objection. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005) (finding that the class member lacked standing to challenge the sufficiency of class notice where the class member failed to file a proof of claim); *see also Rodriguez v. Disner*, 688 F.3d 645, 660 (9th Cir. 2012) (addressing appellate standing) ("[O]bjectors who do not participate in a settlement lack standing to challenge class counsel's . . . fee award because, without a stake in the common fund pot, a favorable outcome would not redress their injury."). Though the Second Circuit has not itself addressed the question of standing for class members who decline to participate in a settlement fund, the Court concludes

2

that this determination is self-evident: a class member who has no interest in the appropriation of a settlement fund must lack standing to challenge the appropriation of that fund.

Given this determination, the Court concludes that Petri lacks standing to pursue her objections. Petri purchased shares of Wyeth stock during the class period (*see* Doc. No. 128 Ex. 1 § 3); however, she did not file a subsequent proof of claim to participate in the settlement. As such, Petri lacks any interest in the impact of the requested attorneys' fees and proposed minimum distribution threshold on the fund, and, therefore, lacks standing to object. Petri argues that she cannot be required to submit a proof of claim in order to object when her claim would be rendered moot by the minimum distribution threshold. (Petri Letter, dated Apr. 2, 2013, at 5.) However, Petri could not have known whether her claim would fall beneath the minimum distribution threshold until all of the claims were received. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) ("[D]uring the filing period, class members did not know with certainty whether the *de minimis* provision would apply to them. The amount to be paid out per share depended on the total number of claims filed, something no class member could know during the filing period."). Indeed, Petri could not have known whether there would *be* a minimum distribution threshold until the Court approved the plan of allocation, a fact stated in the class notice. (*See* Doc. No. 112-2 at 13 ("If you are a Class Member, you may receive the benefit of, and you will be bound by the terms of, the proposed settlement described in this Notice, upon approval of the proposed settlement by the Court.").) Accordingly, the Court concludes that Petri lacks standing to pursue her objections. Moreover, even if Petri did have standing, the Court would find her objections frivolous for the reasons stated below.

3

## II. Minimum Distribution Threshold

Lead Counsel proposes a $10 minimum distribution threshold, asserting that a *de minimis* threshold is necessary to ensure an efficient allocation of the settlement fund. Specifically, the claims administrator for the settlement fund argues that the proposed threshold is necessary to address the "disproportionate administrative expense to the fund associated with issuing very small checks." (*See* Decl. of Bruce H. Cozzi, dated Feb. 14, 2013, Doc. No. 131 at 2.) This is because, in the administrator's experience, "very small checks, i.e. those under $10.00, are often not cashed initially, and in many cases are never cashed. Moreover, because many small checks are not cashed during their initial valid period, they occasionally need to be, and are subsequently reissued, at the request of the recipient." (*Id.*)

The Court sees no reason to disagree with the administrator's assertion and notes that numerous courts in this district have echoed that sentiment in upholding similar thresholds. For instance, in *In re Global Crossing Securities and ERISA Litigation*, Judge Lynch found a $10 *de minimis* threshold reasonable on the ground that "at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their de minimis amounts of relief." 225 F.R.D. 436, 463 (S.D.N.Y. 2004). Similarly, in rejecting an objection to a $50.00 cutoff, Judge Koeltl found that "courts have approved minimum payouts in class action settlements in order to foster the efficient administration of the settlement." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *12 (S.D.N.Y. Dec. 20, 2007). Indeed, this Court has also upheld identical thresholds on a number of occasions. *See In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09 Civ. 6351 (RJS), Doc. No. 136, at 109 (approving $10.00 distribution threshold); *In re Wachovia Equity Sec. Litig.*, No. 08 Civ. 6171 (RJS), Doc. No. 98, at 13 (same); *In re L. G.*

*Philips LCD Co., Ltd. Sec. Litig.*, No. 07 Civ. 909 (RJS), Doc. No. 62, at 10 (same). Moreover, in its letter to the Court, Lead Counsel states that only 0.5% of eligible shares will be affected by the minimum distribution threshold – ensuring a more efficient distribution for plaintiffs that held or hold the remaining 99.5% of eligible shares. (*See* Letter, dated July 1, 2013, attached.)

Even assuming Petri's standing to object to the $10 threshold, the Court finds her objections to be without merit. Petri's sole argument against the threshold rests on the Second Circuit's decision in *In re Literary Works*, 654 F.3d 242 (2d Cir. 2011), a copyright infringement action that addresses the conflict between classes with different sets of claims, *id.* at 245-46. Petri asserts that, as in *Literary Works*, the $10.00 threshold "freeze[s] out groups of class members" and "violates Rule 23(a)(4)" by creating a favored class – institutional investors – that benefits at the expense of a disfavored class – small-time investors who fall below the threshold. (Obj. at 12-14.) However, *Literary Works* is inapposite in this action and does not displace the string of precedent favoring distribution thresholds. In addition, the Court has already certified the class, and in so doing, affirmed that the claims and measure of damages is the same for all of its members. (*See* Mem. and Order, dated Sept. 18, 2012, Doc. No. 106 (certifying class and finding that Lead Plaintiff met requirements of Fed. R. Civ. P. 23(a)).) Accordingly, even assuming standing, the Court finds that the proposed minimum distribution threshold is entirely reasonable.

Having so found, the Court concludes that due and adequate notice was directed to all class members who could be identified with reasonable effort advising them of the Plan of Allocation as defined in the Settlement Agreement, dated November 7, 2012, and of their right to object thereto. The Court further concludes that a full and fair opportunity was accorded to all persons and entities who are class members to be heard with respect to the Plan of Allocation. *See* Fed. R. Civ. P. 23. In addition, the Court concludes that the formula for the calculation of

the claims of authorized claimants set forth in the class notice provides a fair and reasonable basis upon which to allocate the proceeds of the net settlement fund established by the Settlement Agreement. The Court finally concludes that the Plan of Allocation, as set forth in the class notice, is, in all respects, fair and reasonable, and the Court approves that plan – including the proposed minimum distribution threshold of $10.00.

### III. Attorneys' Fees

The Court must also, in its discretion, determine a reasonable attorneys' fee for this action. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) ("[W]here an attorney succeeds in creating a common fund from which members of a class are compensated[,] . . . the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." (citation omitted)); *see also* 15 U.S.C. § 78u-4(a)(6) (stating that, in actions governed by the Private Securities Litigation Reform Act ("PSLRA"), "[t]otal attorneys fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). Lead Counsel requests a fee of 24.5% of the settlement fund, resulting in a multiplier of 4.2 based on a lodestar of $3,909,020.75. (Mem. in Support of Motion for Fees, dated Jan. 10, 2013, Doc. No. 117 ("Fee Mem."), at 1.) However, the Court concludes that a fee of 20% of the fund, resulting in a multiplier of 3.45, is appropriate in this action.

In calculating a reasonable attorneys' fee in a class action, a court may "set[] some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47. To determine an appropriate percentage, the court must consider: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy

6

considerations. *Goldberger*, 209 F.3d at 50. The court may then use the lodestar, or the number of hours reasonably expended multiplied by an appropriate hourly rate, as a "cross-check" on the percentage fee. *Id.* at 50. When using the lodestar as a cross-check, the court need not "exhaustively scrutinize[]" the hours expended by the lead counsel. *Id.*

After a review of the *Goldberger* factors, the Court determines that a fee award of 20% of the settlement fund – slightly less than the 24.5% requested by Lead Counsel – plus expenses ($461,050.19) and interest (at the same rate as that earned on the settlement fund) is appropriate. Though an award of 25% or more is not uncommon in PSLRA class actions, *see, e.g., In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999), courts often decrease the percentage of fee awards as the size of a settlement increases to avoid "windfalls where the recovered fund runs into the multi-millions." *See, e.g., In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 521 (E.D.N.Y. 2003) (internal quotation marks omitted). Lead Counsel repeatedly asserted that this settlement is in the top fifteen percent of securities settlements. (*See* Tr. 13:22-23.) Lead Counsel is to be commended for this result: it expended considerable effort and resources over the course of the action researching, investigating, and prosecuting the claims, at significant risk to itself, and in a skillful and efficient manner, to achieve an outstanding recovery for the class members. Indeed, the result – and the class's embrace of it – is a testament to the experience and tenacity Lead Counsel brought to bear. Moreover, Defendants asserted potentially viable arguments against Plaintiffs' claims, rendering the settlement a particularly noteworthy victory for the class. (*See, e.g.*, Mem. and Order Denying Motion to Dismiss, dated Sept. 29, 2010, Doc. No. 46 ("Therefore, *at least at this stage of the litigation*, Plaintiffs have made sufficient allegations [giving rise to a strong inference of scienter]." (emphasis added)).) Nevertheless, in a settlement of this size, the Court must caution

against the unnecessary siphoning of funds from plaintiffs. Accordingly, an award of 20% of the fund still represents a sizeable – and reasonable – payment to plaintiffs' attorneys, while also falling in line with similar awards in this district. *See, e.g.*, *In re Bristol-Myers Squibb Co. Sec. Litig.*, No. 07 Civ. 5867 (PAC), Doc. No. 78, at 1 (S.D.N.Y. Dec. 8, 2009) (awarding 17% fee on $125 million settlement fund). The Court's determination is only confirmed by the lodestar cross-check. Though a secondary consideration following the determination of a reasonable percentage, the cross-check can serve as an indicator of the appropriateness of an award. Here, the Court concludes that a 3.45 multiplier – based on a lodestar of $3,909,020.75 – is a reasonable figure given the laudable result in this action. *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (finding multipliers of 3 to 4.5 to be reasonable).

Again, assuming standing, the Court concludes that Petri's objection to the requested fee and her recommendation that the Court deny any award beyond the lodestar are overstated and meritless. (*See* Obj. at 12.) Petri objects to the requested fee (or *any* reasonable fee) on two erroneous bases: First, Petri doggedly asserts that Lead Counsel did not face any measurable risk in pursuing this action. (*See* Obj. at 4.) Contrary to Petri's assertions, and as referenced above, it bears noting that Lead Counsel was the only firm to file a complaint in this action; the federal government did not engage in a parallel investigation; Defendants did not admit any wrongdoing prior to the action; and Defendants raised multiple, substantial arguments that may have barred any recovery for the class members at summary judgment or trial. (*See* Reply Mem. in Support of Motion for Fees, dated Feb. 14, 2013, Doc. No. 134 ("Fee Reply"), at 3-4.) Indeed, Petri's objection on this count does not seem grounded in the facts of this case, but in her and her attorney's objection to class actions generally. *Compare In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (noting inherent

difficulty and risk of prosecuting PSLRA cases); *with Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (finding a brief filed by Frank, Petri's attorney, objecting to a class action settlement to be "long on ideology and short on law"). Second, Petri evinces a misguided yet fervent focus on the lodestar cross-check, arguing that the requested multiplier – or *any* multiplier – would be inappropriate in this action. (*See* Obj. at 3-12.) However, as noted, the multiplier is merely a "check" in determining a reasonable fee and multipliers have been regularly endorsed in this district. If this and other courts were routinely to reduce counsels' fee awards to their costs, there would be considerably less incentive for counsel to represent plaintiffs in actions of this sort. Petri provides no availing reason why the Court should reduce attorneys' fees in *this* action, and the Court therefore rejects as entirely unreasonable her and her attorney's dogmatic objection to counsel's fee award in this action.

Accordingly, the Court HEREBY ORDERS THAT the awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Lead Counsel from the settlement fund immediately after the date this Order is executed, subject to the terms, conditions, and obligations of the Settlement Agreement, dated November 7, 2012, and in particular ¶ 6.2 thereof, which terms, conditions, and obligations are incorporated herein. The awarded fees and expenses shall be allocated among plaintiffs' counsel by Lead Counsel in a manner which, in their good faith judgment, reflects each counsel's contribution to the institution, prosecution, and resolution of the action. The Court FURTHER ORDERS, pursuant to 15 U.S.C. § 78u-4(a)(4) and as noted at the hearing, that an award of $4,526.25 for costs be paid to Lead Plaintiff Pipefitters Union Local 537 Pension Fund in connection with its representation of the Class.

## IV. CONCLUSION

The Court concludes that Petri lacks standing to pursue her objections and rejects her objections on that ground. In addition, the Court concludes that the Plan of Allocation, including the proposed minimum distribution threshold of $10.00, is reasonable. The Court also concludes that an attorneys' fee of 20% of the settlement fund, or $13,500,000, as well as expenses in the amount of $461,050.19 and interest calculated at the same rate as that earned on the settlement fund is appropriate. Finally, the Court awards $4,526.25 for costs to Lead Plaintiff. Accordingly, and in keeping with the Final Judgment and Order of Dismissal with Prejudice also entered today, the Clerk of Court is respectfully requested to terminate the motion pending at Doc. No. 115 and to close this case.

SO ORDERED.

Dated:      August 7, 2013
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

# Robbins Geller
# Rudman & Dowd LLP

Atlanta       Melville        San Diego
Boca Raton    New York        San Francisco
Chicago       Philadelphia    Washington, DC

Tor Gronborg
torg@rgrdlaw.com

April 1, 2013

<u>VIA EMAIL</u>
sullivannysdchambers@nysd.uscourts.gov

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007

> Re:  *City of Livonia Employees' Retirement System v. Wyeth, et al.*
>       No. 07 Civ. 10329 (RJS)

Dear Judge Sullivan:

As discussed during the March 1, 2013 hearing on the proposed settlement of the above-captioned action, we write on behalf of the Pipefitters Union Local 537 Pension Fund and the Class to update the Court regarding the number of claimants potentially impacted by the proposed settlement plan's $10.00 distribution threshold. We also write to bring to the Court's attention the fact that Julia Petri, the only objector to any portion of the settlement, did not timely (or otherwise) file a claim in this case and, accordingly, does not have standing to object to the distribution threshold or the requested attorneys' fees.

### Updated Information on the Minimum Distribution Threshold

Following the March 1, 2013 hearing, we consulted with Gilardi & Co. LLC ("Gilardi"), the appointed Claims Administrator, on the timeframe for identifying the number of claimants whose claims will fall below the $10.00 minimum distribution threshold. Gilardi has advised us that it will take approximately 120 days from the March 7, 2013 claims deadline to obtain the requested information. The 120 days reflects the time it takes Gilardi to input and analyze the claims information in its computer system, draft and send out information deficiency letters to potential claimants, process responses to the deficiency letters, and audit the computer program that calculates the claims amounts to insure the calculations will be correctly performed. Once these tasks are complete, Gilardi should be in position to provide us with the number of claimants who will be impacted by the $10.00 minimum

distribution threshold. Accordingly, we respectfully request until July 8, 2013 to provide an update to the Court regarding the impact of a minimum distribution threshold.

### Ms. Perti Does Not Have Standing to Object

With regard to Ms. Perti's objection (Dkt. No. 128), the deadline for submitting a settlement claim was March 7, 2013. To date, Gilardi has not received a claim from Ms. Perti.[1] As a result, she does not have standing to object to either the minimum distribution threshold or the requested attorneys' fees. In order to have standing to object, Ms. Petri must have some beneficial interest in the common fund created in this case. Having failed to file a claim, she does not. As the Ninth Circuit held last year, "objectors who do not participate in a settlement lack standing to challenge class counsel's . . . fee award because, without a stake in the common fund pot, a favorable outcome would not redress their injury." *Rodriguez v. Disner*, 688 F.3d 645, 660 n.11 (9th Cir. 2012). *See also Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1128 (9th Cir. 2002) (holding objector's failure to file a claim for his losses precluded him from challenging the settlement, stating the objector's "lack of standing should be apparent"); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005) (a class member who "did not file a proof of claim and therefore does not have standing to bring her objections"); *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-cv-03395-JF, 2011 WL 826797, *2 n.2 (N.D. Cal. Mar. 3, 2011) ("Because neither Mr. Delluomo nor the Orloffs submitted a claim in this case, they lacked standing to object to the settlement.").

The Second Circuit has not specially addressed the issue, but the conclusion that Ms. Petri does not have standing is consistent with the basic requirements for constitutional standing under Article III of the U.S. Constitution, which requires an "injury-in-fact" or "personal stake in outcome of the controversy." *See, e.g.*, *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2nd Cir. 2008) ("a party may invoke the court's authority only in order to 'seek redress for injury done to him . . . not [to] seek redress for injuries done to others'") (citation omitted). Because Ms. Petri did not file a claim, she has no "personal stake" in the common fund and cannot be "injured" by any minimum distribution threshold or attorneys' fees.

---

[1]     On March 26, 2013, plaintiff's counsel wrote to Ms. Petri's counsel, Theodore Frank, to confirm that she had not filed a claim. In a telephone conversation on March 29, 2013, Mr. Frank stated that it was his understanding that no claim was filed by or on behalf of Ms. Petri in this litigation.

The Honorable Richard J. Sullivan
April 1, 2013
Page 3

While the Court can and should independently evaluate both the use of a minimum distribution threshold and the requested attorneys' fees, it should do so independent of Ms. Petri's objection and issue an order confirming that she has no standing to object.

Respectfully submitted,

TOR GRONBORG

TG:dee

cc:    Lynn K. Neuner (*via* e-mail)
       Theodore Frank (*via* e-mail at tedfrank@gmail.com and U.S. Mail)
       Laurie Largent (*via* e-mail)

Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
(703) 203-3848
tfrank@gmail.com

April 2, 2013

The Honorable Richard J. Sullivan
U.S. District Court
Southern District of New York
500 Pearl St. Room 640
New York, NY 10007

<u>**VIA EMAIL:**</u> Sullivannysdchambers@nysd.uscourts.gov

     Re:    *City of Livonia Employees' Retirement System v. Wyeth, et al.,*
             No. 07 Civ. 10329 (RJS)

Your Honor,

     I write on behalf of Ms. Petri in response to the plaintiffs' letter of April 1, 2013 and its contention that she lacks standing to object to both the minimum distribution threshold and the attorneys' fees request. Ms. Petri has not to date filed a claim form, because the settlement for which she received notice, and which has not been modified in any way, entitled her to no monetary payment. You will recall that this was the basis of Ms. Petri's objection filed January 25, 2013 (Dkt. 128 ("Obj.")). There is no dispute that Ms. Petri is a class member, and no dispute that the settlement requires her to waive claims. If Ms. Petri's objection to the settlement is sustained, and the parties were to agree to the modification she requested, she, and other members of the uncertified subclass currently frozen out by the settlement, would be entitled to a new opportunity to file a claim. *E.g., In re Baby Products Antitrust Lit.,* 708 F.3d 163, 2013 U.S. App. LEXIS 3379 at \*25 n.10 (3d Cir. 2013). Plaintiffs' position that Ms. Petri does not have standing to object without filing a futile claim form that currently entitles her to $0 contradicts precedent and the Federal Rules of Civil Procedure.

## Ms. Petri Has Standing to Object on Any Ground

     There is no dispute that Ms. Petri is a class member, and that the settlement will

act to waive claims of Ms. Petri's that the class representative is asserting on behalf of the class. When a class member objects to an undesired settlement approval motion, there is a wide consensus that no Article III injury is required beyond being bound by the settlement's release of claims. *See e.g.*, *Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002) (ability of objecting class member to appeal settlement approval "does not implicate the jurisdiction of the courts under Article III of the Constitution"); *id.* at 7 (an objector's "complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members"); *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 131 n.34 (3d Cir. 2012) (despite fact that issue complained of did not harm objectors, they "had constitutional standing to make such an objection because they were class members who had asserted that objection to the District Court.") (citing *Devlin*); *Cobell v. Salazar*, 679 F.3d 909, 919 (D.C. Cir. 2012) ("Any other conclusion would prove a bitter irony for those who have lost their [chose in action]"); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638-39 (5th Cir. 2012) ("Any class member has standing to object to a class settlement."); *United States v. Alabama*, 271 Fed. Appx. 896, 898-99 (11th Cir. 2008) (*per curiam*); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1183 & n.1 (10th Cir. 2002) (objectors who have objected to entire settlement are entitled to raise all issues relating to settlement fairness with respect to entire class); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727-32 (3d Cir. 2001) (granting standing to appeal fee award when reduction in fees would not benefit appellant class member).

Of the above cases, *Union Asset* is most directly on point. Plaintiffs there alleged that the objector-appellants had not filed a claim form and thus were deprived of standing to object. The Fifth Circuit squarely repudiated this argument:

> Union alleges that some of the appellants did not file a proof of claim, thereby depriving them of standing to bring their objections. Any class member has standing to object to a class settlement. Filing a proof of claim to the settlement fund is one way, but not the only way, for an objector to demonstrate that he is a member of the class. Here, the settlement notice instructed objectors how to establish class membership, and those requirements, with which the appellants complied, did not demand that they file a proof of claim. The appellants have demonstrated their membership in the class and therefore have standing to bring their objections. 669 F.3d at 638-39.

Ms. Petri is an undisputed member of the class. That is enough to confer standing to object regardless of whether she has filed a claim form.

Counseling even further in favor of Ms. Petri's standing is the fact that each of the above cases involved more trying questions of standing to appeal, questions of Article III standing. Standing to object in an already extant case, however, is at most a question only of prudential standing. *See United States Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("The existence of a case or controversy having been established as between the Postal Service and the Brennans, there was no need to impose the standing requirement upon the proposed intervenor.").

And the issue of prudential standing has been settled conclusively by the adoption of Fed. R. Civ. P. 23(e)(5) in 2003. In no uncertain terms it states: "Any class member may object to the proposal if it requires court approval under this subdivision." "Subdivision (e)(4) [now (e)(5)] confirms the right of class members to object to a proposed settlement, voluntary dismissal, or compromise. The right is defined in relation to a disposition that, because it would bind the class, requires court approval under subdivision (e)(1)(C) [now (e)(2)]." Advisory Committee Notes to 2003 Amendments to Rule 23. Under Supreme Court precedent, this broad language— "any"—definitively settles that the "zone of interests" extends to *any* class member. *Compare Bennett v. Spear*, 520 U.S. 154, 163-66 (1997) (statute permitting "any person [to] commence a civil suit" is authorization of "remarkable breadth" to the "full extent permitted under Article III") (*citing Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210-11 (1972))) *with American Immig. Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1358 (D.C. Cir. 2000) (IIRIRA includes no language like "any" that would override prudential standing).

### Plaintiffs' Cited Cases Are Inapposite

Plaintiffs' cited cases on objector standing contradict the law of several circuits and are definitely in the minority of cases, but in any event those cases do not aid plaintiffs' argument here. First, plaintiffs' cited Ninth Circuit cases deny only appellate standing, not initial the standing to object in the district court. *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-cv-03395-JF, 2011 WL 826797, (N.D. Cal. Mar. 3, 2011) and *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005) were incorrect to decide so. *WorldCom* relied exclusively on a case that had determined a question of "standing to appeal." *New York by Vacco v. Reebok Int'l*, 96 F.3d 44, 46, 47 (2d Cir. 1996). In making its determination, the Second Circuit held that those who did not file a timely objection, have no standing *to appeal. Id.* at 47.[1] *Devlin* confirmed this narrow holding,[2]

---

[1] Moreover, the Second Circuit distinguished the *parens patriae* context from the class action settlement context. *Id* at 48. In the class settlement situation, *Devlin* firmly

but it has no bearing on the question of whether a class member who does file a timely objection has standing *to object in the district court.*

Second, that Ninth Circuit line of no-standing cases is limited to situations where the appellant objector does not challenge the fairness of the underlying settlement, but merely challenges the fee award on its own. *Compare, e.g., Knisley v. Network Assocs.,* 312 F.3d 1123, 1125, 1128 (9th Cir. 2002) (appellant no longer challenging approval of the settlement) *with In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 949 n.9 (9th Cir. 2011) ("Because we vacate both orders, we need not address whether Objectors would have independent standing to challenge the Fee Order alone were the Approval Order to remain intact.") (vacating both settlement approval and fee award in $0 settlement where no class members could file claims). Petri, by contrast to the objector in *Knisley,* challenges not just the fee request, but the overall adequacy of representation, fairness and approvability of the settlement. Obj. at 12-14, 17. She has standing to object to the waiving of her claims in exchange for a settlement package that consists of exorbitant attorneys' fees funded by current shareholders (herself one) and a claims process that freezes out the uncertified and unrepresented subclass of small investors (herself one).

Ms. Petri is harmed by each of these three things: 1. the waiver of her claims, 2. the excessive fees that she as a shareholder (claimant or not) is funding and which are depleting the common fund and 3. the claims distribution that demonstrates she and other individual investors have not been adequately represented. As a class member, Petri would benefit from a settlement that fairly apportions common fund among class members and counsel, but the oversized fee request and the minimum distribution cap prevent that. All three prongs of the Article III standing test—injury, causation and redressability—are met.

### The Distribution Threshold Disqualified Ms. Petri from Monetary Payment

Even if the Court is of the opinion that under normal circumstances, a class member must make a claim to challenge either the fee award or the plan of allocation, it

---

establishes that intervention is not necessary to appeal, only objecting is. 536 U.S. at 14 ("Just as class action procedure allows nonnamed class members to object to a settlement at the fairness hearing without first intervening, it should similarly allow them to appeal the District Court's decision to disregard their objections." (internal citation omitted)).

[2] *See* 536 U.S. at 11 ("[T]he power to appeal is limited to those nonnamed class members who have objected during the fairness hearing.").

would be inequitable to find that Ms. Petri lacks standing here. Under the terms of the settlement as proposed, her purchase of less than 18 shares (see Petri Decl. (Dkt. 128-1) ¶ 3) did not entitle her to a payment.

Rather, she was reasonably relying on the class's (and her own) right to "supplemental notice" and a reopened claims period "if the settlement [was] materially altered" by removing the claims threshold in response to her objection. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 2013 U.S. App. LEXIS 3379, at *44 & n.10. *See also Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 43 (D. Me. 2005) (providing new notice to inform class of $11.97 increase in maximum payout to class members). *But see Union Asset*, 669 F.3d at 641 (holding that failure to renotice and reopen claims period was not an abuse of discretion at least when—unlike here—the class notice announced that the plan of allocation was subject to further modification).

Ms. Petri was not required to file a claim form in order to submit a valid objection, and for good reason. It would have been perfunctory for her and every other class member who was not actually entitled to a distribution. "There should be no unnecessary hurdles that make it difficult for class members to exercise their rights to opt out, object, submit a claim, or make an appearance." Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, 3 (2010).[3] A requirement of filing a claims form was not mentioned in the preliminary approval order and would have, in any event, been a needless and undue burden on the Rule 23(e)(5) right of objection. *Cf. Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) (denying final approval where "the parties have made the procedures for filing objections unduly burdensome."); *Freebird, Inc. v. Merit Energy Co.*, No. 10-cv-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *18-*19 (D. Kan. Dec. 6, 2012) (striking several extraneous and onerous prerequisites to objecting); *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (denying preliminary approval noting that "[o]ne hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object.").

And even if a requirement to file a claim were deemed reasonable and valid, failure to comply with it would not be a reason to disregard the objections themselves. *Weinberger v. Kendrick*, 698 F.2d 61, 69 n.10 (2d Cir. 1982) ("Objections which have been

---

[3] Available at
http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

brought to the attention of the court and of counsel for proponents of a settlement by counsel for objectors should not be disregarded simply because they do not precisely comply with the procedures for the filing of individual objections specified in the notice."). A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). In the unique circumstance of a fairness hearing, the Court should consider all meritorious arguments brought to its attention. Of course, the notice here did not even specify that a futile claim form was a prerequisite to objecting to a settlement that froze a class member out.

For the foregoing reasons, Ms. Petri continues to have standing.

Very truly yours,

Theodore H. Frank

cc:     Counsel of record *via email*

**Robbins Geller**
**Rudman & Dowd LLP**

Atlanta
Boca Raton
Chicago

Melville
New York
Philadelphia

San Diego
San Francisco
Washington, DC

Tor Gronborg
torg@rgrdlaw.com

April 5, 2013

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007

      Re:    *City of Livonia Employees' Retirement System v. Wyeth, et al.*
             No. 07 Civ. 10329 (RJS)

Dear Judge Sullivan:

      We write in response to Theodore Frank's April 2, 2013 letter (corrected on April 3, 2013) regarding the standing of his client, Julia Petri. In his letter, Mr. Frank concedes that Ms. Petri did not file a claim form in this litigation and, accordingly, will not participate in the distribution of the settlement funds. Frank Ltr. at 1. As a result, Ms. Petri has no redressable injury and no standing to object to the minimum distribution threshold or attorneys' fees.

      Notwithstanding Ms. Petri's decision not to participate in the settlement, Mr. Frank argues that she has standing to object to the distribution threshold and attorneys' fees because she is a member of the Class. Mr. Frank, however, confuses standing to object to the terms of the settlement itself, which affect all Class members who do not opt out, with standing to object to the amount and distribution of the settlement fund, which only affects Class members who have filed a claim. Because Ms. Petri elected not to participate in the distribution of the settlement funds, she can not be injured or affected by the amount of the fees awarded to class counsel or a minimum distribution threshold.

      The cases cited by Mr. Frank concern objectors who lodged objections to the fairness and adequacy of the settlement and/or class certification, not just fees or distribution issues. Frank Ltr. at 2-3. For example, in *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638-40 (5th Cir. 2012), which Mr. Frank writes is "most directly on point," the objection to the distribution threshold was in addition to objections to the "adequacy, fairness, and reasonableness" of the settlement itself, including to the definition of the class. Accordingly, the primary issues raised in the objections affected all members of the proposed class and standing was not dependent on making a claim. *See also Larson v. AT&T Mobility LLC*, 687 F.3d 109, 131 n.34 (3d Cir. 2012) (objection of class member to "the adequacy of the Class Representatives"); *Cobell v. Salazar*, 679 F.3d 909, 912 (D.C. Cir. 2012) (objection of class member to adequacy of representation and "commonality, cohesiveness, and

829272_1

fairness" of the proposed class); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-89 (10th Cir. 2002) (objection of class member to adequacy of representation and terms of the settlement).[1] Here, Ms. Petri's only objection was to the fees and distribution threshold for the settlement fund. Accordingly, the cases cited in plaintiff's April 1, 2013 letter, which address standing for objections limited to issues of fees or distribution and limit standing to class members who filed a claim form, are directly on point.[2]

Apparently recognizing that his client does not have standing to object to the distribution threshold and fees, Mr. Frank now suggests that Ms. Petri objected to the terms of the settlement itself. *See* Frank Ltr. at 4 (asserting Ms. Petri is harmed by "the waiver of her claims"). But, Ms. Petri was clear in her declaration that she was only objecting to "the excessive request for an attorney award." Dkt. No. 128-1, ¶7. Similarly, at the final approval hearing, as in his briefing, Mr. Frank did not identify any objection with the terms of the settlement and confirmed that "[t]here are really only two issues in dispute and that's the multiplier [fees] and the allocation [distribution threshold]." *See* March 1, 2013 Hrg. Tr. at 19:9-10. Indeed, the Court has already approved the terms of the settlement and the only outstanding items are the distribution threshold and the fees. *Id.* at 44:21-45:17. The outcome of those issues will have no effect on Ms. Petri.[3]

Finally, Mr. Frank suggests that the issue of standing and Ms. Petri's decision not to file a claim form should be ignored because the "distribution threshold disqualified [her] from monetary payment." Frank Ltr. at 4. That suggestion is not well taken. Even with the small number of shares she acquired during the Class Period, until all of the claim forms were submitted and processed, Ms. Petri would not know whether her claim would exceed the $10.00 minimum threshold. *See Union Asset*, 669 F.3d at 641 ("[D]uring the filing period, class members did not know with certainty whether the *de minimis* provision would apply to them. The amount to be paid out per share depended on the total number of

---

[1]     Mr. Frank's suggestion that Fed. R. Civ. P. 23(e)(5) eliminates the need for Article III standing is not supported by the Federal Rules or any case law. Frank Ltr. at 3. As a class member, Ms. Petri had the right to object to the terms of the settlement, which would affect her rights regardless of whether she filed a claim. Having opted not to file a claim, however, she does not have standing to object to those issues which only affect class members who will receive a distribution from the settlement fund.

[2]     Mr. Frank attempts to distinguish plaintiff's cases by arguing they are "limited to situations where the appellant objector does not challenge the fairness of the underlying settlement." Frank Ltr. at 4. But, that is the precise situation here. Ms. Petri has not objected to the fairness of the settlement and her objections are limited to matters of fees and distribution.

[3]     Mr. Frank's various arguments regarding "unnecessary hurdles that make it difficult for class members to exercise their rights to opt out, object, submit a claim, or make an appearance" are irrelevant to the issue of standing. Frank Ltr. at 5. Neither Ms. Petri nor any other class member identified or objected to any purported obstacles previously, and it is clear that there were no obstacles to Ms. Petri filing a claim form or opting out of the settlement.

claims filed, something no class member could know during the filing period."). The Class Notice in this case made it perfectly clear that "TO CLAIM YOUR SHARE OF THIS FUND, YOU MUST SUBMIT A VALID PROOF OF CLAIM FORM POSTMARKED ON OR BEFORE [MARCH 7, 2013]." Dkt. No. 112-2 at 1 (all caps. in original). Having retained an attorney two months before the claims deadline who professes to be an expert in class actions, Ms. Petri had ample opportunity to understand the ramifications of her decision not to file a claim form.[4]

The Court, of course, has the independent authority to evaluate, and should evaluate, all aspects of the settlement and distribution of the settlement funds, including the requested fee award and distribution threshold. Ms. Petri, however, lacks standing to object to either of those issues and plaintiff respectfully requests that the Court issue an Order rejecting her objection.

Respectfully submitted,

TOR GRONBORG

TG:mm
cc:     Lynn Neuner, Esq.
        Laurie Largent, Esq.
        Theodore Frank, Esq.

---

[4]     Mr. Frank now indicates that, if the Court modifies the distribution threshold, he will demand that a new notice be sent to the Class and a new claims period started during which Ms. Petri might file a claim. Frank Ltr. at 5. Nowhere in his objection or at the final approval hearing did Mr. Frank suggest that changing the distribution threshold would require that the entire notice process would have to be repeated. For good reason. Renoticing the class would be costly, confusing and time consuming. It would further delay the distribution of the settlement fund to all of the members of the Class who did submit claim forms (*none* of whom objected to the settlement, fees or distribution). Even in Mr. Frank's own cited authority, *Union Asset*, the district court and the appellate court rejected efforts by objectors to require that notice be reissued after a minimum distribution threshold was changed. *See* 669 F.3d at 641 ("objectors point to no cases requiring a second round of notice to class members, nor an extended filing deadline, when a plan of allocation is amended").

Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
(703) 203-3848
tfrank@gmail.com

April 11, 2013

The Honorable Richard J. Sullivan
U.S. District Court
Southern District of New York
500 Pearl St. Room 640
New York, NY 10007

**VIA EMAIL:** Sullivannysdchambers@nysd.uscourts.gov

Re:     *City of Livonia Employees' Retirement System v. Wyeth, et al.*,
          No. 07 Civ. 10329 (RJS)

Your Honor,

Unfortunately, class counsel, dissatisfied with making a legally incorrect argument in its letter of April 1, 2013, have now resorted to factual misrepresentations of the record in its letter of April 5, 2013 ("April 5 Letter").

In that letter, class counsel assert that "Ms. Petri's only objection was to the fees and distribution threshold for the settlement fund." Class counsel premise their entire standing argument on the premise that Ms. Petri is not an "objector[] who lodged objections to the fairness and adequacy of the settlement and/or class certification," conceding that objectors who do object to class certification have standing. April 5 Letter at 1 (acknowledging that "objection of class member to 'the adequacy of the Class Representatives'" creates standing (*citing Larson v. AT&T Mobility LLC*, 687 F.3d 109, 131 n. 34 (3d Cir. 2012))).

But Ms. Petri's objection explicitly raised questions of Rule 23(a)(4) adequacy of representation, without which the settlement class cannot be certified. Dkt. No. 128 at 2, 12-14. In particular, Ms. Petri complained that "The class representative, by agreeing to a settlement structure that favors large institutional investors like itself while freezing out unrepresented small individual investors, has violated its Rule 23(a)(4) duties to

adequately represent the entire class, not just those class members most similarly situated to itself." *Id.* at 12. The argument heavily relied upon the Second Circuit's decision in *In re Literary Works*, 654 F.3d 242 (2d Cir. 2011), which reversed a settlement approval and decertified a settlement class for Rule 23(a)(4) problems, requiring separate representation when, as here, the claims process would treat different class members differently—even though there was a reasoned basis for the difference of treatment. Ms. Petri's objection concluded by requesting the Court to reject the settlement. Dkt. No. 128 at 17. And at the fairness hearing, Ms. Petri's counsel spoke at length about the implications of the Second Circuit's *Literary Works* ruling on the 23(a)(4) adequacy question here.

Indeed, class counsel acknowledged that they understood Ms. Petri was objecting to class certification and settlement approval when they addressed her Rule 23(a)(4) argument in their brief in support of settlement approval, rather than in their brief in support of their fee request. Dkt. No. 129 at 5 (citing Rule 23(a)(4)); *id.* at 6 (asserting *ipse dixit* without any supporting cases that "there are no identified conflicts between any Class Members" and that the requirements of Rule 23(a) are met). *See also* Dkt. 133 at 2, 4 (recognizing that Ms. Petri was objecting on Rule 23(a)(4) grounds).

The recent case of *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) presents a similar scenario. There, my clients did not file a claim for reimbursement because the class notice, as in this case, informed them they were not entitled to compensation from the claim fund. No one disputed the objectors' standing to object to the Rule 23(a)(4) adequacy of the class representatives, and the Third Circuit reversed the District Court's class certification.[1]

---

[1] Plaintiffs complain that "Nowhere in his objection [sic] or at the final approval hearing did Mr. Frank suggest that changing the distribution threshold would require that the entire notice process would have to be repeated." But that is because Ms. Petri did not ask for the Court to change the distribution threshold; she asked the Court to reject class certification and reject settlement approval unless the parties corrected the problem; the parties let the claims deadline pass while refusing to do so. Instead they defended the settlement structure, even expending settlement funds to pay the settlement administrator to submit a declaration. Rule 23(e) does not give the Court the authority to modify a settlement without the parties' consent. *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). At no point have the parties jointly indicated that they are willing to modify the settlement; at no point until now have the parties argued that they are entitled to make a material modification to the settlement without notice to the class.

There is thus no legitimate dispute that Ms. Petri has objected to the settlement and the class certification, and therefore no dispute that Ms. Petri has standing to object. Class counsel's persistence in an argument they know to be factually and legally false is vexatious and harassing, and a violation of Rule 11. It is also telling: if class counsel did not believe that Ms. Petri's objections were meritorious, they would not risk sanctions to resort to such long-shot tactics in the hopes of improperly short-circuiting consideration of Ms. Petri's objections.

Very truly yours,

Theodore H. Frank

cc:    Counsel of record *via email*

---

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, is distinguishable on the notice question, as it based the refusal of new notice on the grounds that the existing notice gave the district court authority to "approve the plan with modifications and 'without further notice to Settlement Class Members.'" 669 F.3d 632, 637 (5th Cir. 2012). Ms. Petri disagrees that *Union Asset*'s self-renouncing notice complies with Rule 23(e)'s notice requirements, as it is not reasonable to require class members to repeatedly check a docket not readily available to the public to determine if a court has changed their rights under a noticed settlement. But in any event, the notice in this case contains no such clause, and the *Union Asset* reasoning is not applicable.

# Robbins Geller
# Rudman & Dowd LLP

Atlanta
Boca Raton
Chicago

Melville
New York
Philadelphia

San Diego
San Francisco
Washington, DC

Tor Gronborg
torg@rgrdlaw.com

April 15, 2013

VIA EMAIL
sullivannysdchambers@nysd.uscourts.gov

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007

      Re:    *City of Livonia Employees' Retirement System v. Wyeth, et al.*
            No. 07 Civ. 10329 (RJS)

Dear Judge Sullivan:

We write in response to Theodore Frank's April 11, 2013 letter in the above-captioned action. While plaintiff strongly disputes the arguments put forward by Mr. Frank, it does not want to belabor this issue. The record regarding the limited scope of Ms. Petri's objections and her lack of standing is clear and, absent a request from the Court, plaintiff is prepared to stand on the submissions to date.

We must, however, respond to Mr. Frank's assertion that plaintiff's argument is "factually and legally false is vexatious and harassing, and a violation of Rule 11." April 11, 2013 letter at 3. This is a very serious accusation, and entirely without basis. Mr. Frank's letter sets forth no evidence of any impropriety and his disagreement with plaintiff's position provides no grounds for accusing counsel of misconduct. Unfortunately, as evidenced by the attached correspondence, the April 11, 2013 letter to the Court is the latest in a series of escalating threats and personal attacks that Mr. Frank has directed at plaintiff's counsel in this case. Behavior of this type is entirely unbecoming of an officer of the court, and is, itself, vexatious and harassing.

Given the serious nature of Mr. Frank's accusation, plaintiff respectfully requests that the Court schedule a conference to address these matters.

Respectfully submitted,

TOR GRONBORG

TG:mm
cc:    Lynn K. Neuner
       Laurie Largent
       Theodore Frank
832312_1

**Attachment A**

## Tor Gronborg

**From:** Tor Gronborg

**Sent:** Saturday, April 06, 2013 1:50 PM

**To:** 'Ted Frank'

**Cc:** Neuner, Lynn; Laurie Largent; Melissa Holyoak; Adam Schulman

**Subject:** RE: City of Livonia Employees' Retirement System v. Wyeth, No. 07 CV 10329 (RJS)

Dear Mr. Frank:

Obviously, we have a difference of opinion regarding whether your client has standing. That issue has been presented to the Court and we have no intention of withdrawing either the April 1 or April 5, 2013 letters. To the extent you feel the need to engage in additional motion practice, we trust that you will submit this correspondence to the Court.

Tor

---

**From:** Ted Frank [mailto:tfrank@gmail.com]
**Sent:** Friday, April 05, 2013 6:02 PM
**To:** Tor Gronborg
**Cc:** Neuner, Lynn; Laurie Largent; Melissa Holyoak; Adam Schulman
**Subject:** Re: City of Livonia Employees' Retirement System v. Wyeth, No. 07 CV 10329 (RJS)

Mr. Gronberg,

Every element of your email is factually and legally false, and I will not stand for your legal and factual misrepresentations to the Court. You should be ashamed of yourself. You are well aware that Ms. Petri took the position in both her objection and at the fairness hearing that the settlement as structured violated Rule 23(a)(4). You were on notice with our April 2 letter that your standing argument was wholly meritless. You were on further notice that you had violated the local rules by requesting relief without complying with the procedures for a motion. Yet you chose not only to double down on a legally frivolous position, but to make factual misrepresentations in doing so. If your letter of today is not retracted by close of business Monday, we will be moving for sanctions, and will seek appellate review if sanctions are denied.

I did not state that a denial of our objection did not merit appellate review; I simply stated that, given our limited resources, we viewed this as a relatively low-priority case. Your vexatious conduct over this week, combined with your wholly offensive email today and combined with Judge Posner's opinion, is making me reevaluate that position.

Ted

Sent from my iPad

On Apr 5, 2013, at 8:00 PM, Tor Gronborg <TorG@rgrdlaw.com> wrote:

> Dear Mr. Frank:
>
> The letter submitted on behalf of plaintiffs to the Court today, like the letter submitted on April 1, 2013, is factually and legally correct and will not be retracted. You made it clear at the final approval hearing that Ms. Petri did not object to the terms of the settlement and her

objections were limited to attorneys fees and the distribution threshold. The reference to Fed. R. Civ. P. 23(a)(4) in your briefing regarding the minimum distribution threshold can not convert Ms. Petri's objection into one about the terms of the settlement that affect the Class as a whole or generate standing.

While we appreciate the recognition that the objections made by Ms. Petri, should they be denied, would not merit appellate review, we are confident that any finding by Judge Sullivan that Ms. Petri lacks standing would not be a reversible error.

Have a nice weekend.

Tor

---

**From:** Ted Frank [mailto:tfrank@gmail.com]
**Sent:** Friday, April 05, 2013 3:00 PM
**To:** Tor Gronborg
**Cc:** Neuner, Lynn; Laurie Largent; Melissa Holyoak; Adam Schulman
**Subject:** Re: City of Livonia Employees' Retirement System v. Wyeth, No. 07 CV 10329 (RJS)

Mr. Gronborg,

Your letter incorrectly states that Ms. Petri did not object to the settlement, when her objection
filed with the court makes quite clear that she objected on Rule 23(a)(4) grounds. Please retract the letter immediately.

I'm not sure why you want to induce the court into creating reversible error, but if the Court strikes Ms. Petri's objection on standing grounds without considering it, it would transform the
case into the sort of question of legal error prompting us to seek relief in the Second Circuit when
it otherwise wouldn't be likely to meet our threshold for seeking appellate review of a decision.

Theodore H. Frank

Sent from my iPad

On Apr 5, 2013, at 5:32 PM, Tor Gronborg <TorG@rgrdlaw.com> wrote:

> Dear Judge Sullivan:
>
> Attached, please find plaintiff's correspondence in the above-captioned matter.
>
> Respectfully,
>
> 
> Tor Gronborg
> Robbins Geller Rudman & Dowd LLP
> 655 West Broadway, Suite 1900
> San Diego, CA 92101
> Tel 619 231 1058 | Fax 619 231 7423

# Robbins Geller
# Rudman & Dowd LLP

Atlanta
Boca Raton
Chicago

Melville
New York
Philadelphia

San Diego
San Francisco
Washington, DC

Tor Gronborg
torg@rgrdlaw.com

July 1, 2013

VIA EMAIL
sullivannysdchambers@nysd.uscourts.gov

The Honorable Richard J. Sullivan
Thurgood Marshall
United States Courthouse
40 Foley Square, Courtroom 905
New York NY 10007

Re: *City of Livonia Employees' Retirement System v. Wyeth, et al.*
No. 07 Civ. 10329 (RJS)

Dear Judge Sullivan:

We write in accordance with the Court's April 17, 2013 Order (Docket No. 136) to provide information on settlement claims in the above-captioned action and the impact of the $10.00 distribution threshold provided for in the plan of allocation.

In response to the Notice of Proposed Settlement of Class Action (Docket No. 114), Gilardi & Co, the appointed Claims Administrator, has received 120,439 valid claims representing 320,505,304 shares of Wyeth common stock that were purchased during and held through the Class Period (the "Settlement Shares"). Based upon the claims data received from Class Members, 57,982 claims would fall below a $10.00 distribution threshold. These claims, in total, represent only 1,453,619 or 0.45% of the total Settlement Shares. In other words, the use of a $10.00 distribution threshold would not impact claims made on behalf of over 99.5% of the Wyeth shares eligible for a distribution from the settlement.

We also asked Gilardi to provide information on the impact of reducing the distribution threshold to $1.00. Under such a scenario, 2,893 claims, representing 23,941 Settlement Shares (0.007% of the total Settlement Shares) would fall below the distribution threshold.

We, and the Claims Administrator, believe that the $10.00 distribution threshold is beneficial by lowering administrative costs associated with uncashed distribution checks while, as reflected in the results provided above, impacting a very small number of the total Settlement Shares. Should the Court be inclined to modify the current distribution threshold, however, we recommend that it be replaced by a $1.00 threshold for the initial distribution of settlement funds and that the $10.00 threshold be applied to any further distributions. This would increase the

853837_2

Robbins Geller
Rudman & Dowd LLP

The Honorable Richard J. Sullivan
July 1, 2013
Page 2

number of claimants receiving a distribution settlement while maintaining the benefits of minimizing administrative and distribution expenses to the Class.

At the Court's request, we are prepared to respond to any questions Your Honor may have or provide additional information concerning the distribution threshold, the planned distribution of the Settlement Funds or other matters regarding the settlement.

Respectfully submitted,

TOR GRONBORG

TG:mm
cc:     Lynn K. Neuner, Esq.
        Laurie Largent, Esq.
        Theodore Frank, Esq.